<u>In the Matter of the Application of T. Z.-A. O. for Admission to the Bar of Maryland</u>, Misc. No. 3, September Term, 2014

**BAR ADMISSION – DENIAL OF ADMISSION –** Court of Appeals, upon consideration of unfavorable recommendations of Character Committee for Fifth Appellate Circuit and State Board of Law Examiners and independent review of record, held that applicant to Bar of Maryland had not met burden of proving that he possesses requisite moral character and fitness for admission to Bar of Maryland because applicant: (1) had demonstrated consistent pattern of financial irresponsibility; and (2) completed and signed car loan application which included false financial information and failed to include information about recent bankruptcy.

Argued: November 6, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. No. 3

September Term, 2014

_____

IN THE MATTER OF THE APPLICATION
OF T. Z.-A. O. FOR ADMISSION TO THE
BAR OF MARYLAND

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Watts, J.

_____

Filed: December 22, 2014

In this case, we are asked to reconsider the denial of the application for admission to the Bar of Maryland of T. Z.-A. O. ("Movant"),[1] who: (1) has demonstrated a consistent pattern of financial irresponsibility; (2) completed and signed a car loan application which included false financial information and failed to include information about a recent bankruptcy; and (3) failed to disclose a prior arrest and conviction on his law school application. Both the Character Committee for the Fifth Appellate Circuit ("the Committee") and the State Board of Law Examiners ("the Board") recommended that Movant be denied admission to the Bar of Maryland.[2] For the below reasons, we agree that Movant has not demonstrated on this record that he currently possesses the requisite moral character and fitness for admission to the Bar of Maryland and deny Movant's request for reconsideration.[3]

## BACKGROUND

On May 21, 2012, Movant filed with the Board an application for admission to the Bar of Maryland. On June 25, 2012, the Board forwarded the application to the Committee. Movant passed the July 2012 Maryland Bar Examination.

---

[1]On August 26, 2014, this Court granted Movant's "Motion to Designate Applicant by Initials."

[2]On April 18, 2014, relying on the adverse recommendations of the Character Committee for the Fifth Appellate Circuit and the State Board of Law Examiners, this Court denied Movant admission to the Bar of Maryland. On May 19, 2014, Movant filed a Motion for Reconsideration, in which he requested oral argument. We granted Movant's request, and heard oral argument on November 6, 2014.

[3]Rule 5(a) of the Rules Governing Admission to the Bar of Maryland provides that an "applicant bears the burden of proving to the Character Committee, the Board, and th[is] Court the applicant's good moral character and fitness for the practice of law."

As a result of matters uncovered during the Committee's investigation, on June 10, 2013, a three-member panel of the Committee conducted a hearing to determine whether Movant possessed the good moral character and fitness necessary for admission to the Bar of Maryland. Movant appeared, represented by counsel, and testified. The panel also received into evidence twenty-five exhibits. On August 13, 2013, the panel issued a Report, unanimously recommending that Movant be denied admission to the Bar of Maryland. The panel made findings of fact, which we summarize.[4]

On May 22, 1996, in Columbus, Ohio, Movant was arrested for public indecency.[5] On July 12, 1996, Movant pled guilty to the offense and was sentenced to thirty days' incarceration, with one day credited toward the sentence.[6] The remaining twenty-nine days were suspended, on the condition that Movant not be convicted of any other crime during the next two years.

In 2004, Movant applied, and was accepted, to Tulane University Law School. Question 28(a) of the Tulane University Law School application asked: "[H]ave you ever been charged with, arrested for, convicted of, [or] pled guilty or nolo contendere for a violation of any law?" Despite certifying in the application that his responses were true, correct, and complete, Movant answered Question 28(a) in the negative.

---

[4]The record before this Court does not include a transcript of the hearing that was conducted on June 10, 2013, before the panel; as such, we summarize the findings of fact as detailed in the panel's Report.

[5]As the Board later found, Movant was twenty-two years old at the time of his arrest.

[6]In addition to the thirty-day period of incarceration, Movant was required to pay a $220 fine and stay away from all city and metropolitan parks in Columbus, Ohio, for two years.

Movant disclosed the 1996 arrest and conviction for public indecency on his application for admission to the Bar of Florida. Upon review of Movant's application, the Florida Board of Bar Examiners became aware that Movant had failed to disclose the arrest and conviction for public indecency on his law school application. The Florida Board of Bar Examiners informed Movant of the discrepancy. As a result, Movant notified Tulane University Law School that he had failed to disclose the arrest and conviction for public indecency on his application for admission.[7]

On May 10, 2004, a few months after applying to law school, Movant filed a voluntary petition for Chapter 7 Bankruptcy. At the hearing, Movant admitted that his financial activities had been irresponsible, and included the use of multiple credit cards when he had no employment or other means to pay the balances. On August 18, 2004, Movant discharged $58,000 in debt.

On August 25, 2006, Movant purchased a new Honda vehicle. According to Movant, he initially intended to purchase a used car, but sales personnel persuaded him to test-drive new vehicles and initiated the car loan application process for the purchase of a new vehicle. Movant signed the car loan application, as well as at least four additional contracts and agreements related to the purchase of the car. The loan application did not mention Movant's 2004 bankruptcy, and falsely stated that Movant owned a home, made

---

[7]Later, an official from Tulane University Law School, Dean Susan L. Krinsky, provided a letter stating that Movant would have been admitted to Tulane University Law School even if he had disclosed the arrest and conviction.

no rental or mortgage payments, and earned $3,500 per month.[8] By signing the car loan application, Movant certified that all information on the car loan application was "true, correct, and complete." Movant asserted that the sales representative "must have inserted" the false information concerning his home ownership and income into the car loan application, which allowed Movant to qualify for the car loan. Movant acknowledged that, at the time of the car's purchase, he was aware that the interest rate on the car loan was 14.95% and that his monthly car payment would be $674.70. Movant nevertheless took possession of the car.

In Fall 2007, Movant stopped making monthly car payments. Movant indicated he did so "because of what he considered contractual irregularities and/or alterations in the contract." Despite developing concerns about these irregularities, Movant did not immediately return the car, but rather continued to use the car until surrendering it in February 2008.

At the time that Movant surrendered the car, there was an arrearage of $19,000 outstanding on the car loan. Movant testified that he litigated against the financing company, disputing responsibility for the deficiency. Movant testified that the financing company forgave the outstanding arrearage.

As to Movant's current financial situation, Movant is self-employed, and performs research and writing for a law firm in Florida. In 2012, Movant earned approximately

---

[8]Later, the Board determined that, at the time that he applied for the car loan, Movant worked part-time as a library clerk at the Louisiana Supreme Court, earning between $500 and $600 per month.

$24,000, and, from January 2013 to June 2013, Movant had earned between $18,000 and $19,000. Movant admitted that he has $220,000 in private and federal student loan debt. Movant testified that he made the minimum payments on the private loans, and that the federal loans were in forbearance or deferment.[9]

Based on these findings of fact,[10] the Committee reached the following conclusions:

> [Movant] has yet to show financial responsibility. Since his bankruptcy, [Movant] has continued to accumulate debt for which [he] appears to have no plan to pay. Since [Movant]'s bankruptcy in 2004 [through] which he discharged $58,000 in debt, he has accumulated the better part of $200,000.00 in student loans and additional consumer debt with no full[-]time employment ever attempted. He has also discharged the $19,000.00 vehicle loan by way of litigation against the credit company financing the loan.

> [Movant] has still failed to acknowledge the significance of having a loan application processed with untruthful information about his financial situation included over his signature. [Movant] admitted that he knew that there was no way that he should have qualified for the loan necessary to purchase the vehicle. Yet he kept and drove the vehicle until he chose to stop paying toward the loan. Even after he stopped making payments toward the loan, [Movant] continued to employ the use of the vehicle for an additional 5 to 6 months. [Movant], in spite of knowledge of irregularities with the paperwork relating to the vehicle and with knowledge that he should not have qualified for the loan necessary to purchase the vehicle, did nothing to put matters right until contacted by the Florida [Board of] Bar Examiners about the inaccurate application for credit (and when [Movant] was confronted with the $19,000.00 arrearage).

> The conduct of [Movant] reflects adversely on [Movant]'s personal commitment to honesty and truthfulness as well as his commitment to

---

[9]In the Motion for Reconsideration filed with this Court, Movant states that his federal student loans are no longer in forbearance, and that he is currently making payments as set by the Department of Education under an income-based repayment plan.

[10]The Committee also found that Movant was denied admission to the Bar of Florida "because of the illegal behavior, the failure to report the criminal arrest and conviction relating to that illegal behavior when applying to Tulane Law School, financial irresponsibility, and for providing false information when obtaining a motor vehicle loan."

financial responsibility.

Therefore, after considering the totality of the circumstances of [Movant]'s conduct, and the fact that [Movant] bears the burden to prove his good moral character, the review of the record and the testimony of the [Movant] leads th[e] Committee to conclude that [Movant] has failed to meet his burden at this point, and it is the recommendation of the Character Committee for the Fifth Appellate Circuit that his application for admission to the [Bar of] Maryland [] be denied.

On December 6, 2013, the Board conducted a hearing, at which Movant appeared, represented by counsel.[11] On March 18, 2014, the Board issued a report and concluded, by a vote of four to two, that Movant had "not met his burden of proving that he currently possesses good moral character and fitness for membership in the Bar of Maryland." Accordingly, the Board recommended that Movant be denied admission to the Bar of Maryland. In its report, the Board made findings, including the following.

Movant admitted that he signed all documents associated with the car loan application, including a credit application certifying that everything was correct, but stated that he did not read the documents after the first "one or two[.]" In Fall 2007, Movant stopped making monthly car payments "after the credit application to purchase the [car] became an issue with the" Florida Board of Bar Examiners. The Board also found:

[Movant] made a major purchase on credit two years after discharging $58,000 of consumer credit in bankruptcy. He had also established numerous consumer credit accounts when he applied for the [Bar of] Maryland []. [Movant] does not understand the import and obligation of his actions or his legal commitments. [Movant] has only taken his credit obligations seriously when it was evident that they may be an obstacle to becoming admitted to

---

[11]Pursuant to Rule 5(c) of the Rules Governing Admission to the Bar of Maryland, "[i]f the Board concludes after review of the Committee's report and the transcript that there may be grounds for recommending denial of the application, it shall promptly afford the applicant the opportunity for a hearing on the record made before the Committee."

the bar.

[Movant] was thirty-one years of age and a college graduate when he entered law school. [Movant] was thirty-two years of age and a law student when he signed the documents contracting to purchase the [car]. He was thirty-three years of age when he applied for admission to the [Bar of] Florida []. [Movant] was thirty-eight years of age when his application for admission to the [Bar of] Maryland [] was accepted for filing. [Movant] was an adult through all of the incidents and issues which are of concern to both the Florida and Maryland Bar Examiners, yet treats these incidents like they were youthful indiscretion. He has a history of incurring financial obligations when he lacks the means to fulfill them and uses any method he can to evade them. He has shown no commitment to honesty and financial responsibility.

## STANDARD OF REVIEW

The issue before us is whether Movant has met the burden of proving that he "possesse[s] the moral character to practice law in the State of Maryland." In re Application of Cramer, 427 Md. 612, 622, 50 A.3d 1066, 1071 (2012) (per curiam) (citations omitted). An applicant must possess good moral character for admission to the Bar. Id. at 622, 50 A.3d at 1071-72. Good moral character is "denoted by those qualities of truth-speaking, of a high sense of honor, of granite discretion, [and] of the strictest observance of fiduciary responsibility." Id. at 622, 50 A.3d at 1072 (citations and internal quotation marks omitted). We determine present moral character by evaluating whether, "viewing the applicant's character in the period subsequent to his [or her] misconduct, [the applicant] has so convincingly rehabilitated himself [or herself] that it is proper that he [or she] become a member of a profession which must stand free from all suspicion." In re Application of Stern, 403 Md. 615, 629, 943 A.2d 1247, 1255 (2008) (citations and internal quotation marks omitted). Moreover, "good moral character includes truthfulness and

candor, and absolute candor is a requisite of admission to the" Bar of Maryland. Application of Cramer, 427 Md. at 622, 50 A.3d at 1072 (citations and internal quotation marks omitted).

"The Board's conclusions that an applicant does not possess the requisite moral character, and recommendation against admission to the Bar, are entitled to great weight." Application of Stern, 403 Md. at 629, 943 A.2d at 1255 (citations omitted). "This Court, however, is charged with the responsibility to conduct an independent evaluation of the applicant's moral character based upon testimony and evidence submitted before the Committee and the Board." Application of Cramer, 427 Md. at 623, 50 A.3d at 1072 (citations omitted).

## DISCUSSION

Movant contends that, contrary to the recommendations of the Committee and the Board, he has demonstrated the moral character and fitness necessary for admission to the Bar of Maryland.[12] As to the car loan application, Movant acknowledges that he signed the car loan application and other documents concerning the purchase of the car, but asserts that the sales representative must have included the false financial information in the application. Movant concedes that he did not "handle the matter properly" in choosing to

---

[12]As found by the Committee and the Board, Movant failed to disclose his 1996 conviction for public indecency on his law school application. Given our conclusion as to Movant's failure to honor financial obligations and his inclusion of false information on a car loan application set forth below, we need not address Movant's lack of candor with respect to his law school application. Stated otherwise, Movant's failure to honor financial obligations and his conduct with respect to the car loan application, when considered alone, demonstrates that he has failed to meet the burden of proving that he possesses the requisite moral character and fitness for admission to the Bar of Maryland.

stop making monthly car payments and failing to immediately surrender the car, but asserts that he has "learned from the experience." Movant contends that the litigation against the car loan financing company, which resulted in the discharge of the outstanding loan debt, should not be considered evidence of "financial irresponsibility" because the litigation was not undertaken "vexatiously or in bad faith[.]" Movant maintains that he is current on all of his financial obligations and that "[t]he overwhelming majority of [his] indebtedness" is comprised of student loans.

Our cases concerning admission to the Bar of Maryland have made clear that failure to honor financial obligations and lack of candor are serious matters that adversely reflect upon an applicant's ability to practice law. See, e.g., In re Application of Hyland, 339 Md. 521, 535, 663 A.2d 1309, 1316 (1995) ("The conduct of an applicant in satisfying his or her financial obligations and exhibiting financial responsibility is an important factor in assessing good moral character." (Citations omitted)); In re Application of Strzempek, 407 Md. 102, 115, 962 A.2d 988, 995 (2008) ("[A]bsolute candor is a requisite of admission to the" Bar of Maryland. (Citations and emphasis omitted)).

Concerning the failure to honor financial obligations, in Application of Stern, 403 Md. at 636, 633, 943 A.2d at 1259, 1257, we denied admission to the Bar of an applicant who, among other things, had "shown a pattern of financial irresponsibility[,]" and who had "allowed his debt to escalate and made very few efforts, if any, to resolve his financial obligations *until* he was faced with the possibility that his failure could hinder his admission to the Bar." (Emphasis in original). In that case, the Committee found that the applicant "knew that his debts had to be paid and that he had assets to do so, but instead,

he continued to increase his debt until no one would extend him further credit." Id. at 633, 943 A.2d at 1257. Although the applicant contended that he had rehabilitated himself, "adopted a financial plan[,] and [] paid most of his creditors[,]" we observed that, "absent the exigency of the Bar admission process," it was doubtful that the applicant would have made any effort to repay his debt. Id. at 635, 943 A.2d at 1258-59. We stated that the applicant's "financial misconduct . . . in and of itself reflect[ed] adversely on [the applicant's] character and fitness to practice law." Id. at 634, 943 A.2d at 1258.

In Application of Hyland, 339 Md. at 539, 527-28, 663 A.2d at 1318, 1312, we denied admission to the Bar of an applicant who pled guilty to fifteen counts of "failure to remit sales taxes" in violation of Pennsylvania law, and who "fail[ed] to remit employee income tax withholdings" to the Internal Revenue Service. We observed:

> Given the duties that attorneys are ordinarily required to perform, we think that the applicant's failure to carry out his significant legal obligation to satisfy his tax debt to the federal government and the Commonwealth of Pennsylvania is connected to his fitness to practice law. This conduct reflects adversely on the applicant's personal commitment to the proper administration of justice, as well as his honesty and truthfulness.

Id. at 538, 663 A.2d at 1317 (citations omitted). In sum, we concluded "that the applicant's failure to honor his financial obligations evidence[d] a disregard of a legal obligation and reflect[ed] adversely on his fitness to practice law." Id. at 537, 663 A.2d at 1316 (citations omitted).

Here, we conclude that Movant's inability to honor financial obligations and to be financially responsible, as well as Movant's lack of candor, reflect that he does not presently possess the moral character and fitness necessary to practice law in this State.

Movant has shown a consistent and troubling pattern of financial irresponsibility and failure to meet financial obligations. On May 10, 2004, only a few months after applying to law school, Movant filed a voluntary petition for Chapter 7 Bankruptcy; and, on August 18, 2004, Movant discharged $58,000 in consumer credit debt. Movant admitted that his financial activities were irresponsible, and that those activities included the use of multiple credit cards when he was unemployed and had no resources with which to make monthly payments. Despite the bankruptcy, two years later, on August 25, 2006, Movant made a major purchase via credit when he financed the purchase of a new car. Movant was aware that the monthly car payments would be $674.70 and that he earned only between $500 and $600 per month, yet Movant took possession of the car. Later, when issues concerning the car loan application were raised by the Florida Board of Bar Examiners, Movant stopped making monthly car payments. Nevertheless, Movant continued to use the car for months before surrendering it. And, when faced with an arrearage of $19,000 in outstanding car loan debt, Movant litigated to have the outstanding debt forgiven. In addition to the car loan, after his 2004 bankruptcy, Movant accumulated significant debt, including $220,000 in private and federal student loan debt and additional consumer credit accounts.[13]

---

[13]In his application for admission to the Bar of Maryland, Movant indicated that he had established or maintained twenty-four separate accounts with eighteen different creditors over the past five years. Equally troubling is that, although he has accumulated and continues to accumulate substantial debt, Movant has not demonstrated that he has the means to pay or manage the debt. As the Committee found, Movant has not maintained full-time employment, and instead is self-employed, providing legal research and writing to a law firm in Florida. In 2012, Movant earned approximately $24,000, and during the

Movant's unilateral decision to stop making monthly car payments is particularly concerning because it demonstrates an intentional disregard of a known legal and financial obligation. Cf. Application of Hyland, 339 Md. at 537, 663 A.2d at 1316 (We concluded "that the applicant's failure to honor his financial obligations evidence[d] a disregard of a legal obligation and reflect[ed] adversely on his fitness to practice law." (Citations omitted)). As in Application of Stern, 403 Md. at 633-34, 943 A.2d at 1257-58, here, Movant's past financial irresponsibility makes clear that Movant "live[s] a lifestyle based on [overextended] credit and bad judgment." In sum, Movant has demonstrated a longstanding pattern of financial irresponsibility that adversely reflects on his moral character and fitness to practice law.[14]

Equally as important, Movant's character and fitness to practice law is impugned by the lack of candor displayed in connection with the 2006 car loan application. As the Committee found, Movant signed a car loan application which contained false financial information. Specifically, the car loan application contained no information pertaining to

---

first half of 2013, he earned between $18,000 and $19,000. That Movant may presently be current on all of his financial obligations, although commendable, does not demonstrate that Movant has the ability or the inclination to be consistently financially responsible, or that he appreciates the importance of taking responsibility for financial obligations and legal commitments.

[14]As in Application of Hyland, 339 Md. at 538 n.4, 663 A.2d at 1317 n.4, we pause to state that "[w]e in no way intend to cast aspersion on those who finance their education through student loans or those who perform public interest legal work for low pay despite their outstanding loans. We recognize that because of the high cost of education, many people will finance their schooling through loans." Indeed, it is not Movant's student loans, but rather the amalgamation of the ever-growing amount of his debt and Movant's history of incurring substantial financial obligations but not having the means to pay for them, that forms the basis of our determination that Movant lacks financial responsibility.

- 12 -

Movant's 2004 bankruptcy, and falsely stated that Movant owned a home, had no rental or mortgage payments, and earned $3,500 per month. By signing the car loan application, Movant certified that all information on the car loan application was "true, correct, and complete."

Rather than accepting responsibility for the false information in the car loan application, Movant blames the car sales representative and posits that the car sales representative must have inserted the false financial information on the car loan application. At the time Movant applied for the car loan, however, he was earning between $500 and $600 per month, and had filed for bankruptcy only two years earlier. The Committee specifically found that Movant did not believe he should have qualified for the car loan due to his "insufficient income" and recent bankruptcy. Thus, despite Movant's allegations of a duplicitous car sales representative, Movant was aware that, based on his income and prior bankruptcy, it was unlikely that he should have been approved for the loan in the first place. More importantly, Movant signed the loan application containing the false information. And, when Movant was incredibly approved for the car loan, he did not question the matter but instead drove off in a new car. Under these circumstances, it is difficult to view Movant's signing of the car loan application containing false financial information as anything other than an incident that reflects negatively on his character for candor.

Both the Committee and the Board recommended that Movant be denied admission to the Bar of Maryland. As stated above, we afford "great weight" to the Board's conclusion that an applicant does not possess the present good moral character and fitness,

as well as to its recommendation against admission to the Bar of Maryland. Application of Cramer, 427 Md. at 623, 50 A.3d at 1072. "Indeed, that this Court accepts the recommendation of the Board is the rule and the failure to do so, the exception." In re Application of Brown, 392 Md. 44, 65, 895 A.2d 1050, 1062 (2006) (Bell, C.J., dissenting) (citations omitted).

Here, we are not examining a singular instance of failure to provide a full and candid disclosure that could potentially be rehabilitated through later disclosure; instead, we are confronted with Movant's pattern of financial irresponsibility and his lack of candor on the car loan application. At the time of the events detailed above—when Movant declared bankruptcy, incurred additional debt, and applied for admission to the Bar of Florida and the Bar of Maryland—Movant was over the age of thirty.[15] In other words, Movant's misconduct cannot be written off as youthful indiscretions or attributed to juvenility. As the Board found, and we agree, Movant has shown a lack of "commitment to honesty and financial responsibility."

Having made an independent review of the record and after considering the circumstances surrounding Movant's conduct, we conclude that Movant has failed to meet

---

[15]On his application for admission to the Bar of Maryland, Movant indicated that he was born in 1974. In its findings, the Board stated that Movant was thirty-one years old when he began law school, thirty-two years old when he signed the car loan application, thirty-three years old when he applied for admission to the Bar of Florida, and thirty-eight years old when he applied for admission to the Bar of Maryland.

the burden of proving that he possesses the requisite moral character and fitness for admission to the Bar of Maryland.  Movant's Motion for Reconsideration of this Court's April 18, 2014, denial of his application for admission to the Bar of Maryland is, hereby, denied.

**IT IS SO ORDERED.**