*In the Matter of the Application of Deirdre Paulette Brown*, Misc. No. 33, September Term, 2015. Opinion by Hotten, J.

**DENIAL OF BAR ADMISSION — DUTY OF FULL DISCLOSURE — CANDOR AND TRUTHFULNESS** — Court of Appeals held that the applicant had not met the burden of establishing that she possessed the requisite moral character and fitness for admission to the Bar of Maryland. The applicant failed to disclose a prior criminal charge on her Bar application, did not provide a credible explanation for the omission, and intentionally falsified her grade point average on a law school resume for the purpose of enhancing her qualifications with a prospective employer.

Argued: May 4, 2016

IN THE COURT OF APPEALS

OF MARYLAND

Misc. No. 33

September Term, 2015

_____

IN THE MATTER OF THE APPLICATION
OF DEIRDRE PAULETTE BROWN FOR
ADMISSION TO THE BAR OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Battaglia, Lynne A.
          (Retired, Specially Assigned),

JJ.

_____

Opinion by Hotten, J.

_____

Filed:  August 24, 2016

We consider whether to grant the application for admission to the Bar of Maryland of Deirdre Paulette Brown ("Ms. Brown"), who failed to disclose a prior felony theft charge on her application for admission and provided no credible explanation for her omission; intentionally misrepresented her grade point average ("GPA") on her law school resume in order to enhance her qualifications with a prospective employer; and demonstrated a pattern of financial irresponsibility with credit account debt.

The Character Committee for the Seventh Appellate Circuit ("Committee") recommended Ms. Brown's admission to the Bar of Maryland by a vote of three to two. The State Board of Law Examiners ("Board") voted four to three to adopt the recommendation of the Committee. Upon consideration of the recommendations of the Committee and the Board, and based upon our independent review of the record, we hold that Ms. Brown has not met the burden of establishing that she currently possesses the requisite moral character and fitness for admission to the Bar.[1]

---

[1] Maryland Rule 19-203(d) (formerly Rule 5(a) of the Rules Governing Admission to the Bar of Maryland) states, in relevant part:

> **(d) Burden of Proof.** The applicant bears the burden of proving to the Character Committee, the Board, and the Court the applicant's good moral character and fitness for the practice of law. . . .

## BACKGROUND

Ms. Brown graduated from law school in the Spring of 2012. On May 21, 2012, Ms. Brown filed an application with the Board for admission to the Bar of Maryland pursuant to Md. Rule 19-202 (formerly Rule 2 of the Rules Governing Admission to the Bar of Maryland).[2] Ms. Brown's application was forwarded to Stuart Herschfeld ("Mr. Herschfeld") for review and the required investigatory interview, pursuant to Md. Rule 19-203(a)(1) (formerly Rule 5(b)(1) of the Rules Governing Admission to the Bar of Maryland).[3] Thereafter, Mr. Herschfeld requested that Ms. Brown supplement her application to address the status of outstanding debts and the criminal and civil matters noted in her file. Although Ms. Brown supplemented her file, Mr. Herschfeld believed that the information provided failed to address his concerns regarding her application and raised

---

[2] Specifically, Md. Rule 19-202(a) provides:

**(a) By Application.** An individual who meets the requirements of Rule 19-201 or had the requirement of Rule 19-201(a)(2) waived pursuant to Rule 19-201(b) may apply for admission to the Bar of this State by filing with the Board an application for admission, accompanied by a Notice of Intent to Take a Scheduled General Bar Examination, and the prescribed fee.

[3] Md. Rule 19-203(a)(1) states:

**(a) Investigation and Report of Character Committee.**

(1) On receipt of an application forwarded by the Board pursuant to Rule 19-202(d), the Character Committee shall (A) through one of its members, personally interview the applicant, (B) verify the facts stated in the questionnaire, contact the applicant's references, and make any further investigation it finds necessary or desirable, (C) evaluate the applicant's character and fitness for the practice of law, and (D) transmit to the Board a report of its investigation and a recommendation as to the approval or denial of the application for admission.

additional questions regarding Ms. Brown's misrepresentation of her law school grades and her academic probation during college.

Thereafter, Ms. Brown refused to provide further information to supplement her file, because she was unsuccessful on the July 2012 Maryland Bar Examination. When Ms. Brown passed the February 2013 Examination, she contacted Mr. Herschfeld to inquire about the status of her Bar application. On May 23, 2013, Mr. Herschfeld issued a memorandum recommending against Ms. Brown's admission, which stated, in relevant part:

My decision is premised upon the following:

1. While she did not disclose in her application the academic issue regarding a misrepresentation of her GPA for which she was sanctioned by her law school, I found her explanation troubling as she readily admits that she made the representation deliberately to gain a benefit in job search opportunities. Subsequently, there was some documentation provided that further muddied the issue rather than clarifying it as is demonstrated in this file.

2. Ms. Brown never provided a full explanation and response regarding the various outstanding balances to creditors as well as to update me regarding the status of debts that she was not aware of at the time of our interview as to how she was planning to resolve these outstanding debts.

There are other matters that certainly may not weigh in her favor regarding the application, but these are the two primary reasons for which I cannot recommend her as an applicant to the State of Maryland Bar at this time.

On June 7, 2013, the Chair of the Committee, Benjamin Vaughan ("Mr. Vaughan"), submitted a letter to Ms. Brown, advising her of Mr. Herschfeld's recommendation and her right to a hearing pursuant to Md. Rule 19-203(a)(2) (formerly 5(b)(2) of the Rules

Governing Admission to the Bar of Maryland).[4]  Hearings were held before the Committee

on February 23 and April 14, 2015, to address the facts and circumstances concerning the

following matters: past criminal charges against Ms. Brown of making a false statement to

a police officer and felony theft; her failure to disclose the theft charge on her Bar

application; her financial irresponsibility; a reprimand from Ms. Brown's law school for

falsifying information on her resume; and whether the foregoing events reflected a

cumulative pattern of dishonesty, a lack of candor, and a failure to honor legal

commitments.  In attendance were several committee members, including the Mr.

Herschfeld, who testified regarding his recommendation and the reasons supporting his

position.  Ms. Brown appeared without counsel, testified on her own behalf, and offered

into evidence additional documentation requested by the Committee concerning a

statement of criminal charges and an academic reprimand letter from her law school.

Subsequently, on August 4, 2015, the Committee issued a report, which included

two written dissents, recommending by a three to two vote that Ms. Brown be admitted to

the Bar of Maryland.  The Committee rendered the following findings of fact and

conclusions, which we summarize:

---

[4] Md. Rule 19-203(a)(2) provides, in relevant part:

(2) If the Committee concludes that there may be grounds for recommending denial of the application, it shall notify the applicant in writing and schedule a hearing.  The hearing shall be recorded verbatim by shorthand, stenotype, mechanical or electronic audio recording methods, electronic word or text processing methods, or any combination of those methods. The applicant shall have the right to testify, to present other testimony and evidence, and to be represented by an attorney. . . .

**Outstanding and Delinquent Debts**

Ms. Brown reported five credit accounts that were delinquent for more than ninety days: 1) Westlake Financial Services, with an unpaid balance of $ 9,973; 2) Santander Consumer USA, with an unpaid balance of $ 4,789; 3) Midland Credit Management, Inc., with an unpaid balance of $720; 4) HSBC Bank, with an unpaid balance of $1,014; and 5) Afni, Inc., with an unpaid balance of $260. During Ms. Brown's October 2012 interview, Mr. Herschfeld believed that Ms. Brown was unclear regarding the status of the unpaid balances and her ability to satisfy the arrearages. Mr. Herschfeld sought specific information regarding the debts, and exchanged several e-mails with Ms. Brown in connection with his requests. In a letter dated November 15, 2012, Ms. Brown indicated that she had no additional documentation regarding her creditors. In Mr. Herschfeld's May 2013 memorandum, he recalled Ms. Brown's assertion that the resolution of any issues with her creditors was not relevant, since she did not pass the bar examination.

However, on February 22, 2015, Ms. Brown submitted additional documentation reflecting that all five outstanding loan balances were resolved. Ms. Brown further explained:

> My problems with past debt have been due to poor financial planning on my part. I have learned from this and have re-paid all accounts that I owed. As evidence of my ability to be financially responsible I have two open accounts that are in good standing. A Wells Fargo Credit Card opened in 2012 and a Capital One automobile loan opened in 2013.

The Committee did not discover any information that "contradict[ed]" or "call[ed] into question[,]" Ms. Brown's most recent representation regarding her outstanding debts, and

therefore, was satisfied that she demonstrated her character and moral fitness for the practice of law with respect to her credit account debt.

## Criminal Charges

In 1992, Ms. Brown was charged with making a false statement to a police officer and felony theft. She only disclosed the charge of making a false statement on her Bar application. The charges arose from an alleged robbery that occurred on or about October 10, 1992, while Ms. Brown was a manager in a retail clothing store in Prince George's County. The charging document for the false statement reflected the following:

> [Ms. Brown] made a report that she was the victim of a robbery. [Ms. Brown] stated that she left the T/A and was on her way to make the night deposit, when a black male grabbed her and pulled her into a deserted hallway. [Ms. Brown] said that she dropped her hand bag [and] the deposit bag and ran back into the main hallway to call for help. [A mall employee] who was closing up her ear piercing booth stated that she observed [Ms. Brown] walking past her booth and there was no one else in the [hallway] at the time. [T]he mall was closed. The ear piercing booth is located [approximately] twenty feet from the hallway of the alleged incident. [The mall employee] also stated that [Ms. Brown] walked calmly out of the hallway as though nothing was wrong. Landover Mall Security SPO Grey who was at the outside entrance to the hallway stated that no one came out of the hallway.
>
> This investigator checked the [hallway] [and] there is no way the alleged suspect could have escaped through the hallway without being seen. A check with the District Manager . . . indicated that [Ms. Brown] was not allowed to make deposits by herself. Ms. Brown stated the opposite[.] Ms. Brown stated that her boyfriend . . . was in the area of the T/A at around 9:00 [p.m.] but only stayed for about five minutes. SPO Gray and SPO Chase both security guards at the [L]andover [M]all indicated that they both observed the boyfriend around the T/A until closing at 10:00 [p.m.] The boyfriend [then] re-appeared from the opposite side of the mall just after the robbery [(alleged)]. A total of $1,817 was allegedly taken from [ ] the District manager who is responsible for T/A funds.
>
> On [October 12, 1992] this investigator was assigned this case for follow-up investigation. After talking to the persons mentioned in this application

based on this investigator['s] training and experience, the statements made to P/O Officer Neel 1776 on [October 10, 2012] concerning this robbery are false. . . .

Ms. Brown denied making a false statement during her October 2012 interview and during the hearings.

Ms. Brown's charge for felony theft in connection with the 1992 incident was not reported on her Bar application. Question Number 12 of the application required that she provide "a complete record of all criminal proceedings (including traffic citations, arrests, and summonses) to which [she is or has ever been] a party. . . ." Ms. Brown testified that she did not disclose the theft charge because she was not aware of it.

She explained that when she initially sought the criminal records from the Circuit Court for Prince George's County, she was only provided documents relating to the false statement charge. The record reflects that the felony theft charge was listed under a separate case number, but a part of the October 1992 incident. At the request of the Committee, Ms. Brown produced a copy of the Statement of Charges, which indicated that she was charged with theft in excess of $300 cash from New Retail Concepts.

Docket entries revealed that both charges were placed on the stet[5] docket on September 20, 1993.[6] The record does not reflect convictions for either charge. During Ms. Brown's testimony, she recalled that at the direction of a Public Defender, she pled "not guilty[,]" but agreed to accept the stet. Ms. Brown further testified that she subsequently hired an attorney to remove the charges from the stet docket before the stated time period, after being advised that she should not have accepted it. The record does not reflect whether Ms. Brown's attempt was successful. The Committee concluded that the charges did not reflect negatively on Ms. Brown's character, given their remoteness in time, the fact that they were placed on the stet docket, and did not result in convictions.

---

[5] Md. Rule 4-248 provides:

**(a) Disposition by Stet.** On motion of the State's Attorney, the court may indefinitely postpone trial of a charge by marking the charge "stet" on the docket. The defendant need not be present when a charge is stetted but if neither the defendant nor the defendant's attorney is present, the clerk shall send notice of the stet to the defendant, if the defendant's whereabouts are known, and to the defendant's attorney of record. Notice shall not be sent if either the defendant or the defendant's attorney was present in court when the charge was stetted. If notice is required, the clerk may send one notice that lists all of the charges that were stetted. A charge may not be stetted over the objection of the defendant. A stetted charge may be rescheduled for trial at the request of either party within one year and thereafter only by order of court for good cause shown.

**(b) Effect of Stet.** When a charge is stetted, the clerk shall take the action necessary to recall or revoke any outstanding warrant or detainer that could lead to the arrest or detention of the defendant because of the charge, unless the court orders that any warrant or detainer shall remain outstanding.

[6] The Committee opined that Ms. Brown possibly resolved the theft charge without fully understanding that the arresting officer later supplemented the case with a felony theft charge.

The Committee found that Ms. Brown was "entirely candid" in discussing the charges before them.

### Academic Reprimand for Falsification of Resume

The Committee found Ms. Brown's "admitted intentional misrepresentation of her [GPA] during the final semester of law school[,]" most egregious. Ms. Brown provided an April 24, 2012 reprimand letter from her law school's Academic Standards Committee, which reported that she submitted a resume to the school's Director of Career and Professional Development that falsely reported her GPA to be 3.71, when her GPA was only 2.71. The letter also noted that Ms. Brown failed to correct the misrepresentation when the Assistant Director of the career development office congratulated her on the false GPA.[7]

In deciding to issue a reprimand, the Academic Standards Committee considered the following: 1) Ms. Brown's "estimable record of accomplishments;" 2) her "civic engagement and respect by her classmates;" 3) "the isolated nature of the incident;" and 4) the "sincerity of Ms. Brown's regret regarding her conduct." During the hearings, Ms. Brown admitted she placed false information on her resume in order to secure an on-campus interview with a prospective employer, who required a minimum GPA of 3.0. Ms. Brown also testified that she withdrew her application with the prospective employer after the interview, reasoning that her conduct was "dishonest," "unethical," and "stupid."

---

[7] Subsequently, the Assistant Director held a meeting with Ms. Brown to discuss the incorrect GPA and referred the matter to the law school's academic committee after Ms. Brown admitted to the falsification.

Although Ms. Brown acknowledged that her misrepresentation would have been exposed when the employer obtained her law school transcript, she admitted that she would not have reported it had she not been caught by the career development staff.

The Committee accepted mitigation evidence relative to the resume incident. The Committee observed that three years had elapsed since the event leading to her academic reprimand, and that during that time, Ms. Brown held a real estate license, has been a notary public, and has worked for at least two title companies. The Committee also observed that within that period, no complaints had been lodged against her, and the accuracy and integrity of her work had not been questioned.

The Committee also accepted a letter from a classmate of Ms. Brown's and member of the Student Bar Association, who served on the Academic Standards Committee and reviewed the falsification incident. The letter stated, in relevant part:

> I have no reservations or hesitation in recommending her for admission to the Maryland Bar. I believe that what occurred was completely out of character for her and is not reflective of the type of person she is, or the kind of attorney she will be.

The Committee concluded that it was "impressed" with Ms. Brown's accomplishments in the years since graduation, in addition to the statements made by supporters in her reference letters. The Committee also considered Ms. Brown's expression of contrition and her demeanor during her testimony, and found that the act of falsifying her resume in law school "represented an anomaly rather than a character trait," in which Ms. Brown "has learned a very difficult lesson" and "is not likely to engage in such behavior in the future."

Accordingly, the Committee concluded that Ms. Brown demonstrated "her moral character and fitness for the practice of law in this respect[.]"

**Civil Litigation**

The Committee observed that Ms. Brown's application included references to several previous civil actions in which she had been a party. The Committee accepted Ms. Brown's explanation, and concluded that given the remoteness in time, "they do not indicate a propensity on her part to abuse the legal system for her advantage."[8]

**The Committee's Conclusions**

In closing, the Committee stated:

> We have had the opportunity to review all of the documents which Mr. Herschfeld received, and the additional documents which Ms. Brown provided during the two hearings on this matter. We believe Ms. Brown has been candid and forthcoming with respect to embarrassing and difficult matters in her past. We have had the opportunity to consider her testimony in substance, and her demeanor during those two hearings. We have had the opportunity to review the statements of those who support her candidacy for admission to the Bar. We are impressed with Ms. Brown's accomplishments. After consideration of all of these factors, we believe Ms. Brown has borne her burden of proving her character and moral fitness for the practice of law in the State of Maryland. We recommend that she be admitted to the Bar.

Two of the Committee members disagreed with the majority's recommendation in written dissents. David DeJong ("Mr. DeJong"), observed that the following factors weighed heavily against Ms. Brown's admission to the Bar: 1) the nature of Ms. Brown's actions in deliberately and intentionally falsifying her resume in order to establish her

---

[8] Given this Court's focus on Ms. Brown's past conduct as it relates to her duty of full disclosure and character for candor and truthfulness, we agree with the Committee's conclusion regarding the remoteness of her prior civil litigation matters, and therefore, will not address those matters.

- 11 -

eligibility for a position of employment; 2) "[t]he fact that the action occurred while Ms. Brown was in law school;" 3) "[t]he fact that Ms. Brown withdrew her resume for consideration only because of the likelihood that she would get caught in her act of dishonesty;" 4) "[t]he fact that but for her fear of being caught, she would have pursued the position and would have persisted in her deception to that end;" and 5) "[t]he fact that only three years have passed since her actions."

Mr. DeJong concluded that Ms. Brown's law school "would have been well justified in expelling her on the basis of her actions" under the University's Honor Code, and that the choice to issue a reprimand was not a factor reflective of a "proper candidate for admission to the Bar." Mr. DeJong acknowledged the mitigation evidence relative to her accomplishments during law school, but nonetheless, believed that they did not outweigh the severity of her actions which resulted in an academic reprimand. Accordingly, Mr. DeJong concluded that Ms. Brown failed to demonstrate that she possessed the requisite character and moral fitness for the practice of law.

Mr. Vaughan, the Chair of the Committee, who joined in voting against Ms. Brown's recommendation in a separate written dissent, shared similar concerns regarding Ms. Brown's dishonesty in falsifying her resume, and emphasized that her actions transpired during law school, in contemplation of a career as an attorney. Mr. Vaughan also expressed concerns regarding Ms. Brown's inconsistent testimony, relative to her failure to disclose the felony theft charge on her Bar application. He observed that Ms. Brown indicated that her failure to disclose was because she could not recall it, which contradicted her prior testimony where she admitted her recollection of the charge.

Specifically, Mr. Vaughan observed that during the February 23, 2015 hearing, Ms. Brown initially testified as follows:

> [MR. VAUGHAN]: Putting debt and resolution of debt aside for a second, is there anything else you would like to . . . testify to with regard to matters raised by Mr. Herschfeld over and above the debt issues?
>
> [MS. BROWN]: Yes. So on the false statement and grand theft, I was very clear with him when he spoke to me about this that I never said that I committed theft or anything of that nature. . . . [the police officer] kept saying, '[y]ou're lying to me, you're lying to me.' This went on multiple incidents. And then he finally arrested me.
>
> At first he charged me with making a false statement. Then at some point he did do the theft, I do remember that, but I remember the theft either—I don't know if it got tied into the stet or if it went away. . . .

(emphasis omitted).

However, when questioned regarding her reasons for not disclosing the theft charge, Ms. Brown stated the following:

> [MR. VAUGHAN]: Why did you omit the theft charge when you filled out this application? So the record's clear, page 92 is question 12 (a) of the application for admission to the bar and your response to question 12 (a) where you have identified simply a single criminal charge. The question calls for a "complete record of all criminal proceedings," etc., and you have responded by identifying simply the false statement to a police officer charge. Now, why did you not include the theft charge?
>
> [MS. BROWN]: I think that when I went to the courthouse and got the documents, I'm not sure if I understood—I know that at some point—I don't think I understood that there was also a grand theft charge, I don't think I ever understood there was actually a grand theft charge. Every time I went, when I went to court I thought it was about the false statement.
>
> * * *
>
> [MR. VAUGHAN]: Putting aside [the criminal record for the theft charge], are you now testifying that you do not recall ever being charged with the charge of grand theft?

- 13 -

[MS. BROWN]: I don't remember that particular charge.  I do remember at some point that there was—I know that the officer at some point was trying to say that, you know, I was involved in the robbery somehow in that I was making a false statement.

[MR. VAUGHAN]: Let me ask you this—[w]ere you ever charged with the charge of grand theft, whether or not it was arising from the same transaction or in any way connected to the false statement charge?

[MS. BROWN]: I don't know if that charge was ever part of that case.

[MR. VAUGHAN]: Yes, but my question is broader than that.  Were you ever charged—

[MS. BROWN]: I don't ever remember being charged with grand theft.

(emphasis omitted).

Based upon the foregoing, and coupled with her actions in falsifying information on her resume, Mr. Vaughan concluded that Ms. Brown failed to demonstrate her good character and moral fitness to practice law.  Mr. Vaughan noted that Ms. Brown's failure to disclose the theft charge and the absence of a consistent, or credible explanation for the failure to disclose, led to his recommendation against admission.

On October 23, 2015, the Board conducted a hearing on the record made before the Committee in accordance with Md. Rule 19-203(b) (formerly Rule 5(c) of the Rules Governing Admission to the Bar of Maryland),[9] based upon its belief that there could have been grounds for recommending the denial of Ms. Brown's admission to the Bar. The Board ultimately recommended Ms. Brown's admission by a four to three vote. This matter was forwarded to this Court on February 4, 2016. On May 4, 2016, we heard oral argument. For the reasons we shall explain, we hold that Ms. Brown has not demonstrated that she currently possesses the requisite moral character and fitness for admission to the Bar.

## STANDARD OF REVIEW

We address whether Ms. Brown has met the burden of establishing that she "possesse[s] the [requisite] moral character to practice law in the State of Maryland." *In re Application of T. Z.-A.O.*, 441 Md. 65, 73, 105 A.3d 492, 496 (2014) (quoting *In re Application of Cramer,* 427 Md. 612, 50 A.3d 1066, 1071 (2012) (citations omitted). Pursuant to Rule 19-203(d) (formerly Rule 5(a)) of the Rules Governing Admission to the Bar of Maryland, "[a]n applicant must possess good moral character for admission to any Bar, denoted by 'those qualities of truth-speaking, of a high sense of honor, of granite

---

[9] Md. Rule 19-203(b) provides, in relevant part:

**(b) Hearing by Board.** If the Board concludes after review of the Character Committee's report and the transcript that there may be grounds for recommending denial of the application, it shall promptly afford the applicant the opportunity for a hearing on the record made before the Committee. . . .

discretion, [and] of the strictest observance of fiduciary responsibility.'" *Application of Cramer*, 427 Md. at 622, 50 A.3d at 1071-72. *See also Application of T. Z-A.O.*, 441 Md. at 73, 105 A.3d at 496. "[G]ood moral character includes truthfulness and candor, [in which] absolute candor is a requisite of admission to the Bar of Maryland." *Id.* (quoting *Application of Cramer*, 427 Md. at 622, 50 A.3d at 1072).

Moreover, "[w]e determine . . . present moral character by evaluating whether, 'viewing the applicant's character in the period subsequent to his [or her] misconduct, [the applicant] has so convincingly rehabilitated himself [or herself] that it is proper that he [or she] become a member of a profession which must stand free from all suspicion.'" *Application of T.Z-A.O.*, 441 Md. at 73, 105 A.3d at 496 (quoting *In re Application of Stern*, 403 Md. 615, 629, 943 A.2d 1247, 1255 (2008) (citations omitted).

"The Board's [determination] that an applicant does not possess the requisite moral character, and recommendation against admission to the Bar, are entitled to great weight." *Application of Stern*, 403 Md. at 629, 943 A.2d at 1255 (citations omitted). However, "this Court [conducts] its own independent evaluation of the applicant's present moral character based upon testimony and evidence submitted before the [ ] Committee and the Board." *Id.* at 630, 943 A.2d at 1255 (citations omitted).

## DISCUSSION

Ms. Brown admitted that she had been financially irresponsible, failed to disclose the felony theft charge on her Bar application, and falsified material information on her resume during law school. Nonetheless, Ms. Brown avers that these incidents were not indicative of her present moral character and fitness for admission to the Bar of Maryland.

With the exception of Ms. Brown's patterns of financial irresponsibility, which, in our view, she has since rehabilitated based on the record before us,[10] we disagree.

Relative to the failure to disclose information, Ms. Brown alleges that she was not aware of the felony theft charge, and therefore, did not disclose it on her Bar application. However, the record reveals the contrary. Specifically, during Ms. Brown's testimony at the February 2015 hearing, she stated, in relevant part: "I was very clear with [Mr. Herschfeld] . . . that I never said I committed theft of anything of that nature[,]" and that "[a]t first [the police officer] charged me with making a false statement. *Then at some point he did do the theft, I do remember that, but I remember the theft either—I don't know if it got tied into the stet or if it went away.*" (emphasis added). Contrary to these assertions, Ms. Brown thereafter, affirmatively denied having recalled the felony theft charge, by stating, "I don't remember that particular charge [(*i.e.*, the felony theft charge)][,]" and "I don't ever remember being charged with [felony] theft."

Our cases concerning admission to the Bar of Maryland have emphasized "the importance of candor" and full disclosure in the Bar application process. *Application of Stern*, 403 Md. at 634, 943 A.2d at 1258. In the case, *In re Application of Gjini*, ___ Md. ___ (2016), Misc. No. 32, September Term, 2016 (filed July 7, 2016), we denied the admission of an applicant who failed to disclose a Petition to Violate Probation and its attendant Show Cause Order on his Bar application. Similarly, in *In re Application of*

---

[10] At the time of the hearings, Ms. Brown testified and provided evidence indicating that she had paid off her delinquent debts and had not incurred any further unnecessary debt. Additional documentation requested by the Board in September 2015 also revealed that Ms. Brown was adhering to responsible financial management.

*Brown*, 392 Md. 44, 45-46, 57-58, 895 A.2d 1050, 1050-51, 1057-58 (2006), we denied the admission of an applicant who, *inter alia*, omitted his federal conviction for bank fraud on both his law school and Bar application. Likewise, in *Application of Stern*, 403 Md. at 634-35, 943 A.2d at 1258, we denied the admission of an applicant, who, *inter alia*, did not disclose several civil suits filed against him for delinquent credit accounts, numerous accounts with which he had established credit, and the number of his delinquent credit accounts.

Moreover, our cases demonstrate that an applicant's lack of candor, truthfulness, or full disclosure, as reflected by an applicant's inconsistent or contradictory testimony, or other evidence, also supports the denial of admission to the Bar. *See In re Application of Hyland*, 339 Md. 521, 539, 663 A.2d 1309, 1317–18 (1995) (admission denied to applicant whose testimony before the Committee and the Board revealed inconsistencies, contradictions, and evasiveness); *In re Application of K.B.*, 291 Md. 170, 179-81, 434 A.2d 541, 546 (1981) (admission denied to applicant in part, for apparent lack of candor in Bar application, revealed by the applicant's inconsistent testimony before the Board).

Ms. Brown was charged with felony theft and making a false statement to a police officer, which were processed under two separate charging documents and case numbers. Ms. Brown did not disclose the theft charge on her Bar application, although she initially testified that she recalled receiving a separate charge for theft, which she acknowledged in her communications with Mr. Herschfeld. Later during her testimony, Ms. Brown indicated that she had no recollection of the felony theft charge, which was inconsistent with her earlier testimony. "[A] lack of candor and misleading or evasive answers to the

- 18 -

Committee and the Board's questions may be proper grounds for a finding of lack of good moral character." *Application of Hyland*, 339 Md. at 539, 663 A.2d at 1317. Ms. Brown's failure to disclose a known criminal charge, and her inconsistent testimony regarding her recollection of those charges, diminishes the veracity of her testimony, and reflects negatively on her character for candor and truthfulness.

Ms. Brown contends that apart from the October 2012 incident, which occurred in her twenties, she has not received any other criminal charges. Nonetheless, our conclusions regarding Ms. Brown's moral character and fitness are not just based upon the substance of her criminal charges, her age, or current standing with the law, but rather, on her failure to disclose the theft charge on her Bar application as required. "[D]isclosure on the Bar application and immediate and full supplementation after an incident warranting exposition is mandatory, not voluntary. It is not the choice of a candidate for admission whether to disclose and under what conditions." *Application of Strzempek*, 407 Md. 102, 113, 962 A.2d 988, 994 (2008). *See also Application of Gjini*, ___ Md. ___ (2016), Misc. No. 32, September Term, 2016, at *20 (holding that the applicant's "disregard of his obligation to disclose [or supplement his Bar application with a Petition to Violate Probation], whether because of ignorance or calculated error d[id] not warrant his admission to the Bar of Maryland[]").

Ms. Brown's explanations of her of failure to disclose, as reflected in the record and her representations during oral argument before this Court, are inconsistent, and tend to minimize the extent of her responsibility. We further observe that Ms. Brown failed to disclose a known criminal charge, despite signing an affirmation attesting to the accuracy

- 19 -

of the information provided on her Bar application. Ms. Brown affixed her signature under the portion of the Bar application titled "Affirmation of Applicant's Duty of Full, Candid Disclosure and Applicant's Continuing Duty to Submit Written Notice of Changes to Information Sought by the Application," which stated:

> I understand that the required disclosures in this questionnaire are of a continuing nature. I hereby acknowledge my duty to respond fully and candidly to each question or required disclosure and to ensure that my responses are accurate and current at all times until I am formally admitted to the Bar of the State of Maryland. I will advise the Board immediately and in writing of any changes in the information disclosed in or sought by this questionnaire, including any pertinent facts developed after the initial filing of this application and the facts of any incident occurring subsequent to the initial filing of this application.
>
> I do solemnly declare and affirm under the penalties of perjury, that the matters and facts set forth in the foregoing application are true and correct.
>
> I have made and retained a copy of this entire application for my records and for use in the event that the original is lost in the mail or during the character investigation.

(italics and emboldening omitted).

Even more troubling, is Ms. Brown's falsification of information on her resume during the last semester of law school. Ms. Brown alleges that this conduct displayed a "lapse in judgment" that was not indicative of her character, suggesting that the candid confession of her culpability and requisite remorse, should be viewed favorably towards her admission to the Bar. We disagree. Ms. Brown deliberately altered her GPA on her resume to advance employment prospects which she would not have qualified for, had her true GPA had been disclosed. Ms. Brown was cognizant that her actions were misleading.

- 20 -

Ms. Brown also candidly admitted that the motivation behind her actions were calculated and purely designed for her own personal gain.

Ms. Brown further testified that had her law school not confronted her regarding the falsified GPA, she would not have taken the initiative to correct the misinformation. Specifically, Ms. Brown admitted that she did not correct the misrepresentation, even when the Assistant Director of the law school's career development office congratulated her for achieving an "outstanding GPA," and did not do so during an on-campus interview with the prospective employer. In furtherance of this act of deception, Ms. Brown testified that she only withdrew her resume from consideration because of her fear of being caught, and the fact that her actual GPA would have ultimately been revealed when compared against her law school transcript.

Ms. Brown avers that she has since been rehabilitated, pointing to her current role as a real estate settlement agent and a notary public, in the District of Columbia, Maryland, and Virginia areas. Ms. Brown stated that she currently provides notary services and performs an average of fifty transactions a month in connection with settlement closings, which requires, *inter alia*, that she verify and ensure the accuracy of the documents for each transaction. Ms. Brown alleges that these professional roles are indicative of her moral character and fitness, since they demonstrate that she has not "falsified any documents" and "follows the rules," unlike her conduct in the Spring 2012 incident.

We similarly acknowledge Ms. Brown's various accomplishments during law school and the years since graduation, in addition to her candid admission of culpability and remorse for her conduct. However, given that only four years have passed since Ms.

Brown falsified her resume and subsequently failed to disclose the felony theft charge on her Bar application without a credible explanation for the omission during the Committee's investigatory review, , it is questionable whether Ms. Brown fully "understand[s] the high standard of integrity expected of an attorney." *Application of Hyland*, 339 Md. at 539, 663 A.2d at 1318.

The prospect of an applicant's admission to the Bar of Maryland is significantly diminished when he or she engages in misleading and deceptive conduct, which reflects adversely on the applicant's integrity, moral character, and fitness to practice law. *See, e.g.*, *Application of Brown*, 392 Md. at 58, 895 A.2d at 1058 ("Mr. Brown's integrity is further impugned by the fact that he also concealed his incarceration on the resume that he attached to his law school application by affirmatively stating that he was employed during the same period.").

Collectively, Ms. Brown's actions in failing to disclose the felony theft charge, and falsifying information on her resume, are indicative of a cumulative pattern of a lack of honesty and candor, which is contrary to the fundamental characteristics of an attorney. *See Application of K. B.*, 291 Md. 170, 181, 434 A.2d 541, 546 (1981) ("[N]o moral character qualification for Bar membership is more important than truthfulness and candor.") (quoting *In re Application of Allan S.*, 282 Md. 683, 689, 387 A.2d 271, 277 (1978)).

Although we accord great weight to the Board's determination, our independent review of the record, which includes argument before this Court, where Ms. Brown appeared and responded to questions, and the proceedings before the Committee and the

Board, leads us to conclude that Ms. Brown has failed to unequivocally meet the burden of establishing that she presently possesses the good moral character and fitness required for admission to the Bar of Maryland. In 2012, which was approximately four years ago, Ms. Brown revealed to the Committee and the Board that she deliberately falsified her GPA to enhance her qualifications with a prospective employer, and was less than candid regarding a previous felony theft charge. Accordingly, Ms. Brown's application is, hereby, denied.

**IT IS SO ORDERED.**