*In the Matter of the Application of Mark Andrew Overall for Admission to the Bar of Maryland*, Misc. Docket No. 16, September Term, 2017, Opinion by Adkins, J.

**DENIAL OF BAR ADMISSION—DUTY OF FULL DISCLOSURE—CANDOR AND TRUTHFULNESS**—Applicant for admission to the Maryland Bar had not met the burden of establishing that he possessed the requisite moral character and fitness for admission to the Bar of Maryland. Alabama suspended his license to practice law following several instances of misconduct. Alabama twice denied his request for reinstatement. The applicant failed to disclose Alabama's second denial of reinstatement and did not fully disclose a jury conviction for resisting arrest. He did not supplement his application with information requested by the State Board of Law Examiners. The applicant did not provide a credible explanation for these omissions. The Court denied his admission.

Argued: November 6, 2017

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket No. 16

September Term, 2017

IN THE MATTER OF THE APPLICATION
OF MARK ANDREW OVERALL FOR
ADMISSION TO THE BAR OF MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.

Filed: December 18, 2017

We consider whether to grant Mark Andrew Overall's application for admission to the Bar of Maryland. The Character Committee for the Sixth Appellate Circuit ("Committee") recommended that Overall's application be denied because: (1) he demonstrated a lack of candor; (2) his law license had been suspended and not reinstated in Alabama; and (3) because he did not accept personal responsibility for his actions. The State Board of Law Examiners ("Board") unanimously agreed that Overall's application should be denied because of his lack of candor in the application process, and the circumstances of his suspension in Alabama. Both the Committee and the Board concluded that Overall had failed to demonstrate that he possessed the necessary moral character and fitness to practice law in Maryland.

## BACKGROUND

Overall graduated from law school in 2010 and was admitted to the Bar of Alabama that same year, working primarily as a criminal defense attorney. In October 2012, Overall received a private reprimand from the Alabama State Bar for failing to comply with local scheduling conflict resolution rules. Between October 2012 and May 2013, a number of complaints were filed against Overall with the Alabama State Bar. The complaints variously alleged that Overall: (1) failed to appear on behalf of clients, or was tardy; (2) was underprepared for court, leading to a mistrial; (3) had been found in contempt of court after being warned about his conduct; (4) improperly altered a subpoena when he was not authorized to issue subpoenas; (5) improperly filed civil complaints to avoid paying the fee for a jury demand; (6) had not informed a client about a court hearing; and (7) failed to file a written response to a Motion for Summary Judgment.

On May 28, 2013, Overall entered a conditional guilty plea to multiple violations of the Alabama Rules of Professional Conduct ("ARPC") based on these complaints.[1] Overall agreed to a 91-day suspension held in abeyance and two years' probation. Additional complaints were filed with the Alabama State Bar against Overall during his probationary period. The complaints included circumstances leading to Overall's conviction in July 2013 for resisting arrest.

Overall was found in contempt of court on November 12, 2012, for failing to appear on time for a scheduled hearing. He was fined $50.00 and court costs. Overall did not pay the fine. At the show cause hearing, which had been continued twice at Overall's request, the judge imposed an additional fine and court costs. When Overall failed to pay his fines and costs in either matter, the judge set another show cause hearing. Overall filed a motion to continue the hearing on the morning it was scheduled to take place. The judge reluctantly rescheduled the hearing. When the hearing finally took place, Overall was held in criminal contempt, and he was charged with resisting arrest after being taken into custody. He was convicted of resisting arrest in Houston County District Court. Overall appealed, and was convicted again in Houston County Circuit Court in a *de novo* jury trial on April 22, 2015.

The other complaints alleged that Overall had engaged in inappropriate lines of questioning after being told to desist in a criminal trial, and had been found in contempt in

---

[1] Overall pleaded guilty to multiple violations of the Alabama Rules of Professional Conduct ("ARPC"), specifically multiple violations of Rules 1.3 [Diligence]; 1.4(a) [Communication]; 8.4(g) [Misconduct].

another criminal trial. After receiving these complaints, the Office of General Counsel of the Alabama State Bar filed a Petition to Revoke Probation based on multiple violations of the ARPC.[2] In August 2013, Overall consented to the revocation of his probation and agreed to the 91-day suspension. In the consent agreement, Overall admitted to violating the ARPC as alleged in the Petition to Revoke Probation. Overall was denied reinstatement in March 2014 and October 2015.

On May 13, 2015,[3] Overall filed an application with the Board for admission to the Bar of Maryland pursuant to Maryland Rule 19-202.[4] The Board forwarded Overall's application to Character Committee members Alicia Wilson, and later Kamil Ismail, for

---

[2] The Office of General Counsel of the Alabama State Bar alleged multiple violations of ARPC 3.1 [Meritorious Claims and Contentions]; ARPC 3.2 [Expediting Litigation]; ARPC 3.4(c) [Fairness to Opposing Party and Counsel]; ARPC 3.5(c) [Impartiality and Decorum of the Tribunal]; ARPC 8.2(a) [Judicial and Legal Officials]; and APRC 8.4(d) and (g) [Misconduct].

[3] Overall had applied to take the February 2015 Maryland General Bar Examination, but his application was denied because it arrived after the deadline and was substantially incomplete.

[4] The Rules Governing Admission to the Bar of Maryland were renumbered effective July 1, 2016. Maryland Rule 19-202(a) (derived from former Rule 2 of the Rules Governing Admission to the Bar of Maryland) provides that:

> **(a) By Application.** An individual who meets the requirement of Rule 19-201 [Eligibility to Take Maryland General Bar Examination] or had the requirement of Rule 19-201 (a)(2) waived pursuant to Rule 19-201 (b) may apply for admission to the Bar of this State by filing with the Board an application for admission, accompanied by a Notice of Intent to Take a Scheduled General Bar Examination, and the prescribed fee.

the investigation and interview required by Maryland Rule 19-203(a)(1).[5]  Overall was unsuccessful on the July 2015 General Bar Examination, but successful on the February 2016 Examination.

His application disclosed his conviction for resisting arrest in Houston County District Court, and the case number.  Overall stated that his conviction was "pending reversal due to lack of jurisdiction."  He did not list his conviction in Circuit Court, although it occurred before he submitted his Bar Application.

Overall listed some civil actions to which he was a party, but did not list the actions that the Alabama State Bar had taken against him.  Overall also indicated that he had been admitted to the Alabama Bar, but did not attach a certificate of good standing, or explain why he was no longer in good standing in the application.  Overall responded affirmatively to the question "[h]ave you ever resigned from or been charged, reprimanded, or otherwise disciplined by any school, college, or university, or by any trade or professional organization, at any time for any reason?"  He referred to a suspension in school when he

---

[5] Maryland Rule 19-203(a)(1) (derived from former Rule 5 of the Rules Governing Admission to the Bar of Maryland) provides that:

> **(a) Investigation and Report of Character Committee.**  (1) On receipt of an application forwarded by the Board pursuant to Rule 19-202 (d), the Character Committee shall (A) through one of its members, personally interview the applicant, (B) verify the facts stated in the questionnaire, contact the applicant's references, and make any further investigation it finds necessary or desirable, (C) evaluate the applicant's character and fitness for the practice of law, and (D) transmit to the Board a report of its investigation and a recommendation as to the approval or denial of the application for admission.

was a child, but did not list the actions taken by the Alabama State Bar in his primary application.

Overall answered "No" in response to the question: "Have there been any circumstances or unfavorable incidents in your life, whether at school, college, law school, business or otherwise, which may have a bearing upon your character or your fitness to practice law, not called for by the questions contained in this questionnaire or disclosed in your answers?" Overall enclosed a "Disclaimer" with his application, which stated:

> Please know that the enclosed application packet that is being submitted is based on my information given to the best of my recollection, knowledge, and belief. Much of what is being asked involves information dating back several years and I may not remember such events. Any missing or inaccurate information is simply an error based on my inability to remember and is not designed to be a misrepresentation or concealment of such events. Please do not regard any inaccuracies or missing information as a negative indication or assessment against my character, integrity, or honesty as it is not intended to be conveyed in this manner.

(Emphasis in the original).

Overall mailed an addendum ("Addendum") with his Bar Application, which contained more information than his initial Application. He included a statement about employment terminations, his driving record in Alabama, a statement of civil actions,[6] and financial disclosures. Overall provided what he described as "an up to date copy" of his disciplinary history in Alabama, explaining that he "hope[d] that this will paint the correct picture of my ability and character as a lawyer and advocate." His disciplinary history

---

[6] Overall's statement of Civil Actions did not include the actions the Bar of Alabama had taken against him.

included his contempt citations, the Private Reprimand, the Conditional Guilty Plea, the Petition to Revoke Probation and the Consent to Revoke Probation, Orders on the Guilty Plea and Petition, and the Suspension Order. Overall also included the March 2014 Order denying his reinstatement to the Bar of Alabama, and a number of letters from judges and attorneys advocating for his reinstatement.

At various times while his application was pending, Overall provided supplemental information. In October 2015, Wilson sent Overall a letter requesting additional documentation regarding his: (1) financial obligations; (2) civil actions; (3) criminal actions; (4) disciplinary record with the Alabama State Bar; (5) detailed information on his traffic violations; and (6) a "comprehensive list of any complaints and/or contempts that have been filed against you through any and all bars for which you are affiliated." Wilson also asked Overall to explain why each of these issues did not reflect poorly on his "good moral character and fitness to practice law in Maryland."

### The May 5 and June 6, 2016 Supplements

Overall's May 5 Supplement disclosed additional traffic citations in Maryland and Virginia, and updated employment information. His June 6 Supplement responded to Wilson's October 2015 letter. He provided more information about his financial obligations and his civil cases. With regard to most of his civil cases, Overall asserted that these matters did not adversely affect his moral character or fitness to practice law because he was "merely asserting [his] constitutional right to seek legal redress in court as provided by the First Amendment."

6

Overall also addressed his criminal conviction for resisting arrest. He argued that the judge improperly failed to notify him of his right to appeal after finding him in contempt. He provided the case numbers for both the District Court and Circuit Court proceedings, stated that it was the same criminal action, and identified the Circuit Court proceedings as an "unsuccessful appeal." He did not provide more substantial details regarding the appeal or the proceedings, but insisted that "[t]he judge's contempt adjudication was unlawful in several respects and this judge has been cited and reversed for his improper handling of contempt procedures with lawyers previously by appellate courts."

With regard to his disciplinary history, Overall explained:

> I believe you have already received my disciplinary history. Please inform me if this is not accurate. Also please note that I had no control over the synopses that the Office of General Counsel generated for the allegations and many of them are wholly false and are a misrepresentation based on the way they are written.

(Emphasis in the original). Overall did not disclose that he had been denied reinstatement again in October 2015.

**Overall's Character Interview**

In September 2016, Ismail interviewed Overall. At Ismail's request, Overall submitted additional documents, including the judgments of guilt on both his bench trial and the jury trial. At that time, Overall disclosed that he had taken the New York Bar Examination. On September 30, 2016, Ismail issued a memorandum recommending that the Committee hold a hearing before issuing a final recommendation. He identified several

7

concerns regarding Overall's fitness and suggested that those issues merited a hearing

before the Committee. Specifically, Ismail explained that:

> I was concerned about several items that I felt were not
> disclosed and/or inadequately disclosed in Mr. Overall's
> application to the Maryland Bar. I raised these matters with
> him in our interview, where I did not find his explanations
> entirely satisfactory.
>
> ***
>
> In our interview, I asked Mr. Overall if he believed his answers,
> aside from the attachments, were sufficient to disclose his
> Alabama disciplinary proceedings. Mr. Overall responded
> affirmatively, noting that the list attached to his application
> referenced all the civil and criminal proceedings to which he
> was a party, along with the documentation from the
> disciplinary proceedings. I asked him whether, apart from the
> attachments, the application itself contained disclosure of the
> disciplinary proceedings. Mr. Overall eventually
> acknowledged reluctantly that it did not.
>
> ***
>
> In his original application, Mr. Overall did disclose his
> criminal conviction for resisting arrest, which he described as
> "pending reversal due to lack of jurisdiction." At our
> interview, he could not explain this contention in a manner that
> I could understand. Neither his application nor the attachments
> included a second judgment of conviction on this charge, after
> a *de novo* jury trial. Nor did they include an Alabama Supreme
> Court denial of his appeal of the disciplinary proceedings. In
> light of these omissions, I viewed Mr. Overall's disclosure as
> inadequate. It seemed to me that Mr. Overall does not
> sufficiently acknowledge the gravity of the Alabama Bar's
> proceedings against him.
>
> ***
>
> Some of Mr. Overall's characterizations of his clashes with the
> Bar and judiciary in Alabama seem at least plausible to me.
> Indeed, at least one or two of the clashes appear to have

8

resulted at least in part from matters that arguably reflect no more than zealous advocacy on behalf of his clients.

At the same time, there are numerous other incidents disclosed in Mr. Overall's application and in materials obtained independently from the Alabama State Bar, including Mr. Overall's consent to disciplinary actions, that raise troubling questions about his diligence, candor[,] and actions that have not been explained adequately to me by Mr. Overall in our interview.   Moreover, I felt that his disclosures in his application were inadequate in several respects.  Based on the foregoing, I was unable to conclude that Mr. Overall had satisfied his burden of showing that he possesses the necessary good moral character and fitness for the practice of law. . . .

On October 25, the Chair of the Character Committee for the Sixth Appellate Circuit, Robert Ferguson, sent a letter to Overall notifying him of Ismail's recommendation and explaining that the Committee intended to hold a hearing to determine whether he "presently possess[es] the requisite moral character and fitness to practice law."[7]

---

[7] Md. Rule 19-203(a)(2) provides in relevant part that:

If the Committee concludes that there may be grounds for recommending denial of the application, it shall notify the applicant in writing and schedule a hearing. . . . The applicant shall have the right to testify, to present other testimony and evidence, and to be represented by an attorney.  The Committee shall prepare a report and recommendation setting forth findings of fact on which the recommendation is based and a statement supporting the conclusion.  A transcript of the hearing shall be transmitted by the Committee to the Board along with the Committee's report.  The Committee shall transmit a copy of its report to the applicant, and a copy of the hearing transcript shall be furnished to the applicant upon payment of reasonable costs.

9

**The December 5, 2016 and February 12, 2017 Supplements**

Overall submitted further updates to his application regarding traffic tickets and his financial status in December 2016. He also included information on disciplinary proceedings in Alabama. He explained that the Office of General Counsel "has moved to summarily suspend me due to an alleged failure to pay outstanding costs from previous proceedings." Overall claimed that the Alabama State Bar had not complied with procedural requirements, and that "the costs at issue are exorbitant and I cannot possibly maintain the payment plans I have with my various creditors and pay the Alabama State Bar thousands of dollars." He disclosed that he had filed a Petition for a Writ of Mandamus with the Alabama Supreme Court to prevent the Alabama State Bar from suspending him. He stated that the matter was "an administrative suspension" for his failure to pay, and "not the product of any independent misconduct." But Overall had already been denied reinstatement to the Alabama Bar the previous October, and his characterization of the matter as an "administrative suspension" is contradicted by the facts of his ongoing suspension for professional misconduct.

Overall filed more supplemental information on February 12, 2017. He disclosed a change in his employment, updated financial disclosures, and a civil case he had filed in December 2016 against the Maryland Motor Vehicle Administration.

**The May 4, 2017 Supplement and the Character Committee Hearing**

Overall provided an additional supplement on May 4, 2017, which identified a change in his employment, and that he had filed a civil action against Baltimore Gas & Electric in April 2017. Overall also disclosed that someone had filed an application for a

10

peace order against him in March 2017, but that the case had been dismissed because the petitioner never appeared in court.

The Committee held a hearing on May 4, 2017, to address the following issues: (1) the private reprimand by the Alabama Bar; (2) his probation and subsequent revocation and suspension from the Alabama Bar; (3) the two denials of reinstatement to the Alabama Bar; and (4) Ismail's concern regarding Overall's candor and inadequacy of disclosure in his application. Overall appeared without counsel and testified on his own behalf.

**The Character Committee's Findings of Fact and Conclusions**

On June 5, 2017, the Committee issued a report unanimously recommending against Overall's admission to the Bar "based on the panel's assessment that Overall was not candid in his application and submissions, as well as at the hearing."

With regard to the Alabama State Bar Disciplinary proceedings against Overall, the Committee found that:

> [A]fter a few years in practice, Mr. Overall became the subject of disciplinary proceedings prompted by various complaints, mostly from judges before whom he appeared, who asserted instances of failure to appear in court, improper court filings, and other matters including criminal contempt for failure to pay a civil contempt fine. At least some of Mr. Overall's lapses appear to have prejudiced his clients. Mr. Overall was also the subject of Bar complaints and a malpractice action by former clients.
>
> Ultimately, these matters culminated in a charge of resisting arrest after his conviction for criminal contempt. Mr. Overall was initially convicted in a bench trial on this charge of resisting arrest. He disclosed this conviction on his Maryland Bar [A]pplication, but with the qualifier that it was "pending reversal due to lack of jurisdiction." However, in his May 13, 2015 application, including his affirmation of a full and candid

11

disclosure, he failed to disclose that he had also subsequently been convicted on April 24, 2015, after a *de novo* jury trial. The omission of such important information—a jury trial conviction several weeks before submitting his application—cannot be squared with Mr. Overall's affirmation.

The Committee panel had doubts about Overall's candor.[8] In addition to his failure to accurately report his conviction for resisting arrest, Overall did not affirmatively disclose recent legal proceedings. Specifically, a woman had filed an application for a peace order against him,[9] and Overall had filed a civil proceeding against the Maryland Motor Vehicle Administration.[10] The Committee also observed that Overall had seven traffic offenses in Maryland between 2015 and 2016, including three incidents of driving on a suspended license, and that he had continued driving despite knowing of the suspension because he considered the suspension to be "wrongful."

---

[8] The Committee expressed concern that Overall had not disclosed that he had taken and passed the New York Bar Examination. Overall had applied to take the New York Bar Examination after he had applied to take the Maryland Bar Examination. Thus, he could not have reported it on his initial Application. Overall told Ismail that he had taken the New York Bar Examination during his character interview.

The Committee also observed that Overall failed to disclose that he had filed a petition to be permitted to take the New York Bar Examination. Overall first mentioned this petition during the Committee hearing, and stated that the court to whom he submitted his petition in New York had not ruled on the petition, but he had been permitted to proceed. Overall has not provided any other information about this petition.

[9] Overall included this information on a supplement dated May 4, 2017, but that was over a month after the application for a peace order was filed, and made the same day as his Committee hearing.

[10] We recognize that Overall disclosed this proceeding in his February 12, 2017 supplement.

The Committee unanimously concluded that Overall had not met his burden of demonstrating that he possessed the required moral candor and fitness to practice law, and recommended that he be denied admission to the Maryland Bar. Specifically:

> The panel was concerned about Mr. Overall's lack of candor . . . as well as the fact of his suspension and subsequent non-reinstatement by the Alabama Bar. Further, the panel was troubled by his apparent rejection of personal responsibility, including his assertions that various outcomes were through no fault of his own. The panel was also concerned by his apparent lack of concern for his clients who had suffered adverse outcomes from the various matters that were the subject of the Alabama Bar proceedings. The panel's assessment was that the candidate's answers at the hearing were evasive, contradictory and unsatisfactory.

As required by Md. Rule 19-203(b),[11] the Board held a hearing on the record made before the Committee. The Board considered: (1) the Alabama disciplinary proceedings; (2) Overall's lack of candor, including his failure to disclose recent proceedings to which he was a party; and (3) whether Overall demonstrated a "cumulative pattern" that "suggests a pattern of disrespect for the law, the Courts and a lack of candor." The Board unanimously found that Overall had not met his burden to demonstrate that he possessed the character and fitness for admission to the Maryland Bar. As required by Md. Rule 19-

---

[11] Md. Rule 19-203(b), in relevant part, provides that:

> **Hearing by the Board.** If the Board concludes after review of the Character Committee's report and the transcript that there may be grounds for recommending denial of the application, it shall promptly afford the applicant the opportunity for a hearing on the record made before the Committee. In its discretion, the Board, may permit additional evidence to be submitted. . . .

13

203(b), the Board offered Overall an opportunity to withdraw his application before it submitted its report and recommendation to the Court of Appeals. Overall declined to withdraw his application.

On September 11, 2017, the Board submitted its report and recommendation to this Court. We initially and prematurely denied Overall's application in an Order dated September 22, 2017. Overall filed exceptions, requested a hearing on the matter, and proposed several conditions for his admission to the Bar of Maryland.[12] The Board submitted a response to Overall's exceptions. Pursuant to Md. Rule 19-203(c),[13] we held oral argument on November 6, 2017.

## STANDARD OF REVIEW

We analyze whether Overall "has met the burden of establishing that [he] 'possesse[s] the [requisite] moral character to practice law in the State of Maryland.'" *In re Application of Brown*, 449 Md. 669, 683 (2016) (quoting *In re application of T. Z.–A.O.*, 441 Md. 65, 73 (2014)). An applicant to the Bar of Maryland carries the burden of proving "the applicant's good moral character and fitness for the practice of law." Md. Rule 19-

---

[12] The Maryland Rules do not contemplate conditional admission for new applicants.

[13] Md. Rule 19-203(c)(1) provides:

> If the Court, after reviewing the report of the Character Committee, and any report of the Board, believes there may be grounds to deny admission, the Court shall order the applicant to appear for a hearing and show cause why the application should not be denied.

14

203(d).[14]  We have explained that "[a]n applicant must possess good moral character for admission to any Bar, denoted by 'those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility.'"  *In re Application of Cramer*, 427 Md. 612, 622 (2012) (quoting *In re Application of Strzempek*, 407 Md. 102, 112 (2008)).  In determining whether a candidate should be admitted to the Bar, we examine the applicant's "present moral character" to consider "whether, 'viewing the applicant's character in the period subsequent to his misconduct, he has so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion.'"  *In re Application of Hyland*, 339 Md. 521, 535 (1995) (quoting *In re Application of A.T.*, 286 Md. 507, 514 (1979)).

We base our evaluation of an applicant's moral character on an independent review of the testimony and evidence before the Committee and the Board.  *See Application of Brown*, 449 Md. at 684; *In re Application of Stern*, 403 Md. 615, 630 (2008).  This Court, however, accords great deference to the Board's determination that an applicant lacks the requisite moral character and its recommendation that an applicant be denied admission to the Bar.  *See Application of Brown*, 449 Md. at 684; *Application of Stern*, 403 Md. at 629.

---

[14] Md. Rule 19-203(d) provides:

> **(d) Burden of Proof.**  The applicant bears the burden of proving to the Character Committee, the Board, and the Court the applicant's good moral character and fitness for the practice of law.  Failure or refusal to answer fully and candidly any question in the application or any relevant question asked by a member of the Character Committee, the Board, or this Court is sufficient cause for a finding that the applicant has not met this burden.

**DISCUSSION**

"'[A]bsolute candor is a requisite of admission to the Maryland Bar.'" *In re Application of Strzempek*, 407 Md. 102, 112 (2008) (quoting *Application of Stern*, 403 Md. at 634). Although we have recognized that there is no hard or fast test to determine whether an applicant for admission to the Bar possesses good moral character, we have said that "no moral character qualification for Bar membership is more important than truthfulness and candor." *In re Application of Allan S.*, 282 Md. 683, 689 (1978). Throughout the application process for his admission to the Maryland Bar, Overall has demonstrated a lack of candor.

Lack of candor dooms an applicant's chances for admission to the Bar. *See Application of Strzempek*, 407 Md. at 104. In *Strzempek*, we considered whether an applicant who failed to disclose a conviction for drunk driving should be admitted to the Bar. Strzempek, who had been a member of the New York Bar for some time, submitted his application in 2005. *Id.* at 105. In April 2006, while his application was pending, he was convicted of driving while intoxicated and multiple related charges in Virginia. *Id.* at 106. The arrest occurred just two weeks before his character and fitness interview in Maryland. Strzempek did not submit any information about his arrest and conviction until nearly nine months later. Even after submitting documentation regarding the arrest, he did not include any reference to his time spent in jail, a complete list of fines, or his suspended sentence for driving while intoxicated. *Id.* at 107. We rejected the Board's recommendation to admit Strzempek because of these alarming omissions. *Id.* at 113. Strzempek attempted to excuse this omission by claiming that he had waited to disclose his

16

conviction until he learned that he had passed the Bar Examination because he was embarrassed by his behavior. *Id.* at 108. We found this explanation inadequate, and emphasized that complete "disclosure on the Bar [A]pplication and immediate and full supplementation after an incident warranting exposition is **mandatory, not voluntary**." *Id.* at 113 (emphasis added). An applicant does not have discretion to decide "whether to disclose and under what conditions." *Id.*

Failure to make full disclosures during character review is also evidence of lack of candor. We denied admission to a Bar applicant who failed to fully disclose financial information on his Bar Application. *Application of Stern*, 403 Md. at 633–35. In response to the relevant questions on the application, Stern failed to disclose the existence of numerous credit accounts, delinquent accounts, and judgments filed against him for failure to keep these accounts current. *Id.* When the Committee and Board inquired about his past due accounts and failure to disclose, Stern did not recognize that his omissions and conduct were wrongful. *Id.* at 621–22. Stern's failure to make the required financial disclosures on his Bar Application was sufficient reason for us to deny his admission to the Maryland Bar. *Id.* at 634–35.

On the other hand, full candor and evidence of rehabilitation can be a saving grace for a candidate with a checkered past. In *Application of Allan S.*, we considered the character and fitness of an applicant who admitted to committing a petty theft after law school. 282 Md. at 686–87. Allan admitted to stealing a tape measure from a department store. He expressed remorse for his actions and admitted to the theft, even though his shoplifting charge was ultimately dismissed. At the time of the theft, Allan, who lived on

a communal farm, felt that stealing the tape measure was a permissible means of protesting "big institutional structures." *Id.* at 687. The Board recommended denying admission, but we ruled to admit Allan. After recognizing the "moral turpitude" of the theft offense, we considered Allan's candor in disclosing the incident and his admission of guilt despite the fact that he was never convicted. *Id.* at 691. We concluded that Allan possessed the requisite good moral character and ordered his admission because he was "most candid," remorseful, and acknowledged his misconduct. *Id.*

Unlike in *Application of Allan S.*, Overall has demonstrated a consistent lack of candor during the application process. He failed to disclose the extent of his disciplinary history in Alabama when he initially filed his Bar Application. He did not supplement his Application with the fact that he had been denied reinstatement a second time in Alabama. Despite filing multiple supplements to his application, he has repeatedly mischaracterized his disciplinary status. Overall has described his suspension in Alabama as "administrative," or a breach of an agreement by the Alabama State Bar. We also observe that Overall's supplements often contained belated disclosures. For example, Overall disclosed the peace order against him in a supplement dated the same day as the Committee hearing, and only addressed the matter after the Committee raised it at the hearing. He has failed to provide any of the requested documents relating to the peace order. Overall also made incomplete and delayed disclosures regarding his application to the Bar of New York, and never complied with the Committee's request to provide copies of his New York Bar Application and related correspondence.

18

We agree with the Board that Overall's disclosure of his conviction for resisting arrest was substantially incomplete and reflects negatively on his candor in the application process. Although Overall disclosed his conviction in District Court on his application, he did not disclose that he had been convicted in a *de novo* jury trial, despite the fact that it occurred before he submitted his application. Instead, he stated that the District Court conviction was "pending reversal due to lack of jurisdiction." This statement obfuscates the true nature of his conviction. The references in his Addendum and Supplements to the case numbers and his vague statement about an "unsuccessful appeal" are inadequate to resolve his lack of candor.

We view Overall's conduct as equally troubling as the conduct of the applicants in *Strzempek* and *Stern*. Just as those applicants refused to disclose relevant information in their initial application or subsequent supplements, Overall has repeatedly mischaracterized his conduct or completely failed to make necessary disclosures. Unlike the full candor demonstrated by the applicant in *Allan S.*, Overall has not taken responsibility for, or admitted to his repeated lack of candor or failure to disclose. During proceedings before this Court, we inquired about the record before the Committee and the Board. Overall attempted to excuse his lack of disclosure by accusing the Committee and Board of making misrepresentations about what he had disclosed and when. Overall's equivocation regarding his lack of candor prevents us from concluding that he understands the gravity of his omissions. Full and prompt disclosure of requested information on the Bar Application is mandatory. *See, e.g.*, *Application of Strzempek*, 407 Md. at 113.

19

Overall's disciplinary history in Alabama, beyond his lack of candor, is relevant to our decision to deny him admission. Alabama has suspended his license, and twice refused to reinstate it. In a case involving the revocation of a Maryland law license, *In re License of Thompson*, 363 Md. 469, 471 (2000), we considered whether Maryland improvidently licensed an out-of-state attorney. Thompson, who successfully completed the Out-of-State Attorney Examination, was disbarred in the District of Columbia after completing the Maryland Examination but before he was sworn in. *Id.* at 471–72. Thompson had disclosed that he was facing disciplinary proceedings and had been suspended, but failed to provide further requested information regarding those proceedings, and did not disclose that he had been disbarred. *Id.* at 472–73. In deciding to revoke his license because he was ineligible for admission through the Out-of-State Attorney procedure, we also observed that his conduct in the District of Columbia would subject him to sanctions in Maryland, and arguably demonstrated that he lacked the requisite moral character to be admitted in Maryland. *Id.* at 478–79.

The Alabama Bar sanctioned Overall for a litany of incidents involving professional misconduct. Specifically, his law license was suspended after failing to appear—on numerous occasions—for court dates on behalf of his clients. He has been held in contempt on multiple occasions, including criminal contempt. He improperly filed court documents and failed to follow Alabama procedure for issuing subpoenas. This misconduct would violate the Maryland Attorneys' Rules of Professional Conduct ("MARPC") as well.[15] His

---

[15] Effective July 1, 2016, the Maryland Lawyers Rules of Professional Conduct were renumbered and renamed the Maryland Attorneys' Rules of Professional Conduct.

failure to appear at numerous hearings for his clients or make necessary filings would likely violate, at a minimum, MARPC § 19-301.3 (Competence) and § 19-303.2 (Expediting Litigation). *See, e.g.*, *Attorney Grievance Comm'n of Maryland v. Schuler*, 454 Md. 200 (2017) (attorney disbarred following repeated failures to appear for client, visit clients, or file necessary documents on client's behalf); *Attorney Grievance Comm'n of Maryland v. Gray*, 436 Md. 513 (2014) (attorney indefinitely suspended after continually delaying the litigation of her client's case). Overall's misconduct in Alabama leads us to conclude that his suspension in Alabama reflects poorly on his moral character and fitness to practice law. Overall has acknowledged that he could have done some things differently, but he fails to recognize that he has engaged in misconduct, or that his lapses could have harmed his clients.

Overall raises two legal arguments as to why he should be admitted to practice in Maryland. First, he asserts that our decision to initially deny admission was based on "misrepresentations and omissions" from the Board. Second, he argues that the right to work is a "basic human right."[16]

---

[16] Overall relies on Article 23 of the United Nations Universal Declaration of Human Rights, G.A. Res. 217 (III) A, U.N. Doc. A/810 (Dec. 10, 1948), which provides:

> (1) Everyone has the right to work, to free choice of employment, to just and favorable conditions of work and to protection against unemployment.

> (2) Everyone, without any discrimination, has the right to equal pay for equal work.

> (3) Everyone who works has the right to just and favorable remuneration ensuring for himself and his family an existence worthy of human dignity, and supplemented, if necessary, by other means of social protection.

We do not find that the Board's report contains misrepresentations and omissions. The record supports the Board's findings.[17] It is evident, upon review, that some of the Committee's findings were incorrect with regard to Overall's supplemental disclosures, as we acknowledged earlier.[18] But the Board's findings were not based on those matters. And we agree with the unanimous conclusions of the Board and the Committee that Overall has shown a lack of candor.

**Constitutional and Other Claims by Overall**

Overall relies on *Bd. of Cosmetological Exam'rs of Jefferson Cty. v. Gibbons*, 193 So. 116, 119 (Ala. 1940), for the proposition that the right to follow a common occupation is "an inalienable right, one of the rights of the individual to life, liberty, and the pursuit of happiness to conserve which government exists." But the Alabama Supreme Court also acknowledged that "every business is subject to reasonable regulation under the police power," and that the constitutionality of its licensing statutes was not in doubt. *Id.* In that

---

(4) Everyone has the right to form and join trade unions for the protection of his interests.

The Supreme Court in *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004), has clarified that the United Nations Universal Declaration of Human rights "does not of its own force impose obligations as a matter of international law." The Court concluded that the Declaration does not "establish the relevant and applicable rule of international law." *Id.* at 735. Courts may treat the Declaration as supporting, or persuasive authority, but it has no binding value.

[17] Although Overall takes a different perspective on his suspension in Alabama, he does not deny that he has been suspended, and not reinstated.

[18] *See supra* notes 8–10 and accompanying text.

case, the Alabama Supreme Court decided that an individual was not subject to the licensing statute. *Id.* at 120. Overall has not alleged that our regulation scheme is unreasonable, or that he is not required to obtain a law license to work in Maryland as a lawyer.

As Overall asserts, practicing law is a fundamental activity protected by the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution.[19] *See Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 283 (1985); *Sheley v. Alaska Bar Ass'n*, 620 P.2d 640, 642–43 (Alaska 1980). The Privileges and Immunities Clause generally protects the right of citizens who live in one state to work in another state without discrimination. *See Piper*, 470 U.S. at 280. But Overall has not claimed that Maryland has denied him his law license because he resides in a different state.

Overall relies on *Truax v. Raich*, 239 U.S. 33, 41 (1915), and argues that "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the amendment to secure." In that case, the Supreme Court concluded that an Arizona statute that required companies to employ no fewer than 80% of workers who were either qualified electors or native United States citizens, violated the Fourteenth Amendment. *Id.* at 40–42. States may not "deny to lawful inhabitants, because of their race or nationality, the ordinary means of earning a livelihood." *Id.* at 41. But Overall has not alleged that Maryland has denied him

_____

[19] Article IV, § 2, cl.1 of the United States Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

admission to the Bar based on his race, and the record does not demonstrate any discriminatory behavior in his Committee or Board hearings.

Overall raises substantive due process claims.[20] The Fourteenth Amendment provides that:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.[21] The Supreme Court has explained that the "liberty" component of the due process clause includes "the right of the individual . . . to engage in any of the common occupations of life . . . ." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). States may not interfere with this liberty interest "by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect." *Id.* at 399–400. Thus, absent infringement of a fundamental right or constitutionally protected property right, an individual must demonstrate that legislative

---

[20] Overall relies on several substantive economic due process cases such as *New State Ice Co. v. Liebmann*, 285 U.S. 262 (1932), and *Allgeyer v. Louisiana*, 165 U.S. 578 (1897). The doctrine of substantive economic due process has been abandoned. *See United States v. Carolene Prods. Co.*, 304 U.S. 144 (1938); *West Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937); *Nebbia v. New York*, 291 U.S. 502 (1934). As such, we do not find these arguments persuasive.

[21] Overall does not raise claims under the Maryland Declaration of Rights, but we acknowledge that Article 24 of the Maryland Declaration of Rights expresses the same protections as the Due Process Clause of the Fourteenth Amendment. *See City of Frostburg v. Jenkins*, 215 Md. 9, 15 (1957).

action, such as establishing licensing standards for an occupation, has no rational basis. *See Comprehensive Accounting Serv. Co. v. Md. State Bd. of Pub. Accountancy*, 284 Md. 474, 483–84 (1979). The individual challenging the statute must prove "that it does not bear a real and substantial relationship to the governmental object sought to be attained." *Id.*

It is undisputed that states have a "compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975). "The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary government function of administering justice and have historically been 'officers of the courts.'" *Id.* Maryland has a significant interest in ensuring that its lawyers display good moral character and candor.

"A State cannot exclude a person from the practice of law . . . in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 238–39 (1957). States are free to set "high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a **rational connection** with the applicant's fitness or capacity to practice law." *Id.* at 239 (emphasis added). Even if the state's standards are appropriate, a candidate may not be denied admission unless there is a basis for finding that he has not met the state's standards, or if

25

the state action is "invidiously discriminatory." *Id.* Simply put, "a person cannot be prevented from practicing [law] except for valid reasons." *Id.* at 239 n.5.

In *Schware*, the Supreme Court considered whether there was a basis to conclude that Schware lacked the good moral character to be admitted to the New Mexico Bar. The New Mexico Board of Bar Examiners denied Schware's application based on: (1) his use of aliases approximately 20 years earlier to avoid anti-Semitic discrimination; (2) several arrests without trial or convictions on suspected violations of California statutes prohibiting "criminal syndicalism" and the Neutrality Act of 1917; (3) and his membership in the Communist Party from 1932 to 1940. *Id.* at 240–44. The Court rejected New Mexico's rationale for excluding Schware, pointing out that this conduct had occurred a substantial time earlier. Schware, the Court explained, had made a "forceful showing of good moral character" and overcome any "substantial doubts about his present good moral character." *Id.* at 246. In addition to presenting substantial evidence of his character and conduct, Schware had been entirely candid about his history consistent with the requirements of New Mexico Bar Admissions, and with the dean of his law school. *Id.* at 235 n.2, 240. The Court concluded that New Mexico's decision to deny admission was not based on any evidence that rationally justified a conclusion that Schware lacked the moral fitness to practice law. *Id.* at 246–47.

During the application process, Overall did not make a "forceful showing of good moral character." *Id.* at 246. Overall submitted letters written by attorneys and judges in Alabama recommending his reinstatement in Alabama both in his Addendum and to this Court. But those letters are several years old. Thus they do not provide evidence of his

26

**current** moral character and fitness. Unlike the applicant in *Schware*, whose misconduct occurred long before his application to the Bar in New Mexico, Overall's misconduct has occurred recently. And whereas Schware had been candid about his history, Overall has demonstrated a lack of candor throughout the application process. We have held that repeated misrepresentations in the application for admission to the Bar reflects poorly on the applicant's moral character. *See, e.g.*, *Application of Cramer*, 427 Md. at 624 (denying admission to an applicant who displayed a lack of candor and truthfulness by failing to disclose material facts on his application).

## CONCLUSION

The decisions of the Committee, Board, and this Court are based on substantial evidence that Overall lacks the moral fitness to practice law. Maryland has afforded Overall ample opportunity to demonstrate his fitness. His repeated omissions, mischaracterizations, and continued failure to recognize the import of the same leads us to conclude that Overall should not be a lawyer in Maryland. Upon consideration of the entire record before the Committee and the Board, we hold that Overall has failed to satisfy his burden of demonstrating that he has the good moral character necessary for the practice of law and admission to the Bar of Maryland. We shall not order his admission.

**IT IS SO ORDERED.**