*In the Matter of the Application of Alonya Renee Knight for Admission to the Bar of Maryland*
Misc. No. 27, September Term 2018


**Admission to the Maryland Bar – Good Character Requirement – Grounds for Denial of Application**. Applicant for admission to the Maryland Bar who did not respond fully and candidly to questions on her original bar application and later responded evasively and deceptively to requests for clarification failed to satisfy her burden of proving that she currently possessed "good moral character and fitness for the practice of law." Accordingly, her application for admission to the Maryland Bar was denied.
Maryland Rule 19-204; Maryland Code, Business Occupations & Professions Article, §10-207.

Argued: April 9, 2019

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 27

September Term, 2018

_____

IN THE MATTER OF THE APPLICATION
OF ALONYA RENEE KNIGHT FOR
ADMISSION TO THE BAR OF MARYLAND

_____

Barbera, C.J.,
Greene
McDonald
Watts
Hotten
Getty,
Harrell, Glenn T., Jr., (Senior
Judge, Specially Assigned)

JJ.

_____

Opinion by McDonald, J.

_____

Filed: June 24, 2019



Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

Alonya Renee Knight has applied for admission to the Maryland Bar. We must decide whether to grant her application in light of the adverse recommendations of the State Board of Law Examiners ("Board") and the Character Committee for the Seventh Appellate Circuit ("Committee"). The Board determined in a 3-2 vote, as did the Committee unanimously, that she has failed to show that she currently has the "good moral character and fitness for the practice of law" required for admission. Upon our independent review of the record, we agree with the Board majority and the Committee, and deny her application for the reasons set forth below.

## I

## Background

### A. *Meeting the Character and Fitness Requirement for Admission to the Bar*

1. The Requirement

Both this Court and the General Assembly, which have reached a "comfortable accommodation" in the regulation of the practice of law in Maryland,[1] require that one who wishes to engage in that practice satisfy a character and fitness requirement as a prerequisite to admission to the Bar. This Court requires that an applicant for admission to the Maryland Bar demonstrate "the applicant's good moral character and fitness for the practice of law." Maryland Rule 19-204(d).[2] Similarly, the Legislature has specified that

---

[1] *Public Service Commission v. Hahn Transportation, Inc.*, 253 Md. 571, 583 (1969).

[2] At the time of Ms. Knight's application and of the proceedings before the Committee and the Board, the character and fitness requirement was contained in Maryland Rule 19-203. Later, in December 2018, the Court amended the rule in minor respects not pertinent to this matter and recodified it as Maryland Rule 19-204, effective March 1, 2019. *See* Rules Order (December 4, 2018).

"[a]n applicant shall be of good character and reputation."  Maryland Code, Business Occupations & Professions Article, §10-207(b).[3]

This Court has identified the character and fitness requirement as a preeminent criterion for admission to the Maryland Bar.  "[O]ur obligation [is] to the public and to the legal profession to assure that applicants seeking original admission to the Bar possess the requisite moral character and fitness to conduct the affairs of others both in and out of court.  No attribute in a lawyer is more important than good moral character; indeed, it is absolutely essential to the preservation of our legal system and the integrity of the courts." *Application of Allan S.*, 282 Md. 683, 689 (1978).

Every American jurisdiction imposes a similar requirement for admission to the bar. The lineage of character and fitness standards for attorneys can be traced back to both ancient Rome and medieval England.  *See* Deborah L. Rhode, *Moral Character as a Professional Credential*, 94 Yale L.J. 491, 493 (1984).  In theory, a requirement of "good moral character" should protect the public from lawyers who are likely to engage in unethical conduct.  Michael K. McChrystal, *A Structural Analysis of the Good Moral Character Requirement for Bar Admission*, 60 Notre Dame L. Rev. 67 (1984).  Thus, when an applicant is rejected for failing to meet that requirement, one should be able to articulate

---

[3] While the statute appears to add a requirement of "good … reputation" to the character and fitness requirement, in our view reputation is not important in itself, but rather as a reflection of the more important criterion – character.  This is perhaps demonstrated by the fact that our committees are called "character committees," not "reputation committees."

a rational connection between the basis of that rejection and standards for the practice of law.[4] *Id.* at 68.

It is easy to say that "good moral character and fitness to practice law" is essential for admission to the Bar, but it is less easy to say what that standard is. It is a quality elusive of precise definition and often unrelated to credentials, achievement, or past missteps. Although a full definition of character and fitness may be beyond our descriptive powers, candor and forthrightness are clearly its foundation. *In re Meyerson*, 190 Md. 671, 687 (1948) ("No 'moral character qualification for Bar membership' is more important than truthfulness and candor"). The failure of an applicant to the Bar to demonstrate those character traits in his or her application is a warning sign that the applicant may be unable to conduct a legal practice in accordance with the rules of professional conduct.[5] Thus, the burden is placed on the applicant to demonstrate those traits. A failure to be candid and

---

[4] In the past, character and fitness requirements sometimes functioned to exclude persons from the practice of law for arbitrary or discriminatory reasons. Rhode, 94 Yale L.J. at 494-503.

[5] *See, e.g.,* Maryland Rules 19-301.4 (requiring an attorney to keep a client informed and to comply with the client's reasonable requests for information); 19-303.3 (requiring an attorney to act with candor toward a tribunal); 19-303.4 (an attorney must treat an opposing party and counsel with fairness); 19-308.4(c) (classifying various forms of dishonesty as professional misconduct).

One commentator has identified two "prophylactic objectives" for the character and fitness process: (1) "shielding clients from potential abuses, such as misrepresentation, misappropriation of funds, or betrayal of confidences" and (2) "safeguarding the administration of justice from those who might subvert it through subornation of perjury, misrepresentation, bribery, or the like." Rhode, 94 Yale L. J. at 508-9.

forthright in the bar admission process itself is particularly likely to result in denial of an application.  McChrystal, 60 Notre Dame L. Rev. at 78.

2.  The Process

To assess whether an applicant to the Bar meets the character and fitness requirement, the Court has established a character committee in each appellate circuit to investigate each application for admission and to provide a recommendation to the Board as to whether the applicant meets that requirement.  Maryland Rules 19-103, 19-204(a)(1).  The Board in turn reviews the work of the character committee and makes its own recommendation to this Court as to whether the candidate satisfies that requirement.  Maryland Rule 19-204(b).  The Court then makes an independent final decision as to whether the applicant satisfies the requirement.  Maryland Rule 19-204(c).

At each stage of the process, the applicant is entitled to a hearing if it appears that there are grounds for denying admission to the Bar.  Maryland Rule 19-204(a)-(c).  The hearings before a character committee and the Board are conducted on the record and may include testimony and other evidence.  The Court's evaluation of the applicant is based on the record developed before the committee and the Board; the hearing before the Court may include oral argument on behalf of the applicant.  At all times, the applicant bears the burden of proving his or her "good moral character and fitness for the practice of law." Maryland Rule 19-204(d).

The character inquiry is an assessment made at the time of application rather than at the time of any past misconduct.  For example, an applicant who committed a serious crime in the past may satisfy the character and fitness requirement with a showing that the

applicant "convincingly rehabilitated" himself or herself. *Compare Application of A.T.*, 286 Md. 507, 516 (1979) (granting application after concluding that rehabilitation shown) *with Application of David H.*, 283 Md. 632, 641 (1978) (denying application after concluding that rehabilitation "not … sufficiently demonstrated"). A determination that an applicant has not borne the burden of demonstrating good moral character and fitness to practice law is not necessarily a death knell as to the applicant's quest to become a lawyer. Otherwise, a disbarred attorney would have no hope of ever obtaining readmission. This Court has allowed for the possibility of readmission of a disbarred attorney upon a showing of good character. *See* Maryland Rule 19-752(h) (among other things, disbarred attorney must satisfy character and competence requirements as a prerequisite to reinstatement); *In re Meyerson*, 190 Md. at 675 (character requirements for original admission to the Bar and for reinstatement after disbarment are "expressions of the same principles"). Thus, our focus is on the present and we cannot, and do not, say whether, if ever, an applicant who fails on an initial application may satisfy the character requirement in the future.

**B.     *The Application and Evaluation of Ms. Knight***

1. Application

After the dissolution of what she described as a troubled and abusive marriage, Alonya Renee Knight graduated from college and, in October 2016, at age 45, from the David A. Clarke School of Law of the University of the District of Columbia. In December of that year, she submitted her application to take the Maryland bar exam. In that application, she acknowledged her "duty to respond fully and candidly to each question or

5

required disclosure," as well as her duty to update her responses to ensure that they remained accurate up to the time of admission to the Bar. Ms. Knight sat for and passed the February 2017 bar exam.

2. Character Committee Investigation and Hearing

The Board referred Ms. Knight's application to the Committee and flagged certain matters, including her answers to questions about delinquent accounts, civil actions, criminal proceedings, and terminations of past employment. The Committee member designated to investigate her application interviewed Ms. Knight on May 19, 2017. A number of discrepancies soon became apparent. After a thorough investigation and some contentious follow-up communications from Ms. Knight during May and June 2017, the Committee investigator forwarded a detailed 20-page report to the full Committee in July 2017. That report detailed among other things:

- Five civil actions against Ms. Knight in Maryland courts and two civil actions against her in the District of Columbia Superior Court during the period from 1997 through 2012 were not disclosed in her application. In an interview with the investigator, Ms. Knight professed to be unaware of these lawsuits and stated that information concerning some of the earlier actions may have been withheld from her by her former husband (from whom she was divorced in 2003), who she said had been abusive toward her.[6]

- A tort action filed in the District of Columbia Superior Court in 2010 in which Ms. Knight was the plaintiff was not disclosed in her application. In the interview with the investigator, Ms. Knight speculated that the action related to an automobile accident and had been filed by an attorney on her behalf, but stated that she had no notice

_____

[6] At later hearings before the Committee and the Board, Ms. Knight stated that the defendant in one of those civil actions was not her, but her father, whose first name is similar to Ms. Knight's.

6

of the action and had never appeared in court (although she apparently had signed interrogatories as part of the discovery in the case).

- Two misdemeanor criminal actions charging, respectively, theft and battery that were filed against Ms. Knight in 1994 had been disclosed in her application. Ms. Knight professed to remember little about the theft case, although she had apparently been arrested during that prosecution. Both cases were eventually placed on the stet docket.

- While Ms. Knight disclosed various traffic citations in her original application, she failed to initially disclose a pending citation that had resulted in suspension of her driving privileges.

- Ms. Knight failed to accurately describe in her application the circumstances under which she left an internship at an organization called Melwood in April 2015. In her application, she stated that she had left that job because "job term ended" and because she thought it was an invasion of her privacy to take a mandated drug test. Upon checking with that employer, the investigator discovered that Ms. Knight had in fact failed a drug test. When confronted with that information by the investigator, Ms. Knight said that she had likely failed the drug test because she was taking an opioid pain reliever for a medical condition and that, when Melwood asked for details after she failed the test, she decided not to provide information concerning her medical history and left the position. She told the investigator that she had since had surgery to correct the underlying medical condition and was no longer taking the opioid pain reliever.

- Ms. Knight similarly failed to accurately describe in her application why she had left a job with the District of Columbia Department of Health Care Finance. In her application she stated that she had left that job "to attend law school full time." Upon checking with the Department, the investigator learned that Ms. Knight had left that job after receiving advance written notice of a proposed suspension for "insubordination and misfeasance."[7] When confronted by the investigator with that information, Ms. Knight stated that she had been threatened with physical violence by another employee at the

---

[7] At the hearing before this Court, Ms. Knight stated that she had disclosed the proposed suspension in her "original bar application." We have not found that disclosure in the copy of the application provided to us, as opposed to subsequent correspondence she sent to the Board after being questioned by the Committee investigator.

Department and had decided to leave that employment rather than return to what she viewed as a hostile environment.

- While Ms. Knight disclosed certain delinquent debts in her application, she claimed that she was not obligated to pay one of those debts (in an amount of approximately $7,000) because it was for a medication she never received, but was apparently unable to provide any documentation that the creditor had forgiven the debt.

- As disclosed in the credit report submitted with her application, Ms. Knight had various overdue accounts.

- As disclosed in her application, Ms. Knight had not paid all undisputed tax obligations to the IRS.

- After the investigator was unable to obtain a certification from the University of Maryland University College ("UMUC") concerning Ms. Knight's undergraduate and graduate studies at UMUC, Ms. Knight eventually disclosed that she had failed to complete her master's degree program, had received a failing grade, had been placed on academic suspension by the school, and had later been placed on "academic dismissal" when she attempted to repeat courses and received a failing grade in 2017. When the investigator asked for additional information concerning the academic suspension and dismissal and an explanation why Ms. Knight had disclosed neither in her application and initial character interview, Ms. Knight explained that preparation for the bar exam had interfered with her effort to complete her master's program at UMUC. The investigator was perplexed by this explanation as Ms. Knight had registered for a UMUC course that began just two weeks before the February 2017 bar exam and that was scheduled to continue through May 2017. In the course of attempting to obtain the certifications from UMUC, the investigator also discovered that there was a "financial hold" on Ms. Knight's account at UMUC. Ms. Knight attributed the situation to her loss of federal financial aid, but stated that she was unaware of that circumstance at the time she filed her bar application. Ms. Knight claimed to be unaware of her status at UMUC at the time of her interview because she had not checked her email account to which UMUC had earlier notified her of her situation. (Ms. Knight eventually paid her debt to UMUC and the investigator eventually received the requested certifications of Ms. Knight's attendance from UMUC).

8

Many of Ms. Knight's explanations of the various matters outlined above appeared not in her bar application itself, but in subsequent emails and supplements sent to the Board or the investigator after the inquiries made by the investigator. In correspondence with the investigator that was appended to the investigator's report, Ms. Knight accused the investigator of "fabricating" information, deliberately misstating facts, and conducting an "inquisition." The investigator concluded the report with the opinion that Ms. Knight had not met her burden of demonstrating good moral character and fitness for the practice of law. The investigator concluded that the Committee should not recommend admission for Ms. Knight without conducting a hearing.[8]

The Committee held a hearing on Ms. Knight's application over four days before five members of the Committee (not including the investigator) during the period from November 2017 to April 2018.[9] The Committee investigator testified and summarized her report. Ms. Knight represented herself at the hearing and testified at length, but did not present any additional witnesses.

In correspondence with the Board, Ms. Knight had complained that she had been compelled to turn down career opportunities because of the delay in her bar admission due

---

[8] If a character committee determines that there may be grounds for recommending denial of an application, it is to notify the applicant in writing and schedule a hearing. Maryland Rule 19-204(a)(2).

[9] One of the hearing days was cut short at Ms. Knight's request when she suffered what she described as a panic attack. At the later hearing before the Board, Ms. Knight testified that the panic attack was induced by an "abusive and intrusive inquiry" by the Committee concerning her statements that she was a victim of domestic violence.

to the length of her character investigation. When the Committee asked at the hearing for details of the lost opportunities, she said that she would provide additional documentation about them following the hearing. She apparently never provided that documentation.

### 3. Committee Recommendation

Following the hearing, the Committee unanimously concluded that Ms. Knight had not met her burden of proving good moral character and fitness for the practice of law. The Committee issued a detailed 32-page memorandum in September 2018 recounting its investigation and the hearing. It summarized its adverse recommendation as follows:

> Ms. Knight has demonstrated an alarming lack of candor throughout the investigation and hearing process. … We find that Ms. Knight's testimony did not just suffer from a lack of candor but rather from what can best be described as a pervasive pattern of incomplete facts, inconsistencies and positions which strained credulity. Her testimony on multiple points was evasive at best and deceptive at worst.
>
> Further, she showed a remarkable, and remarkably consistent pattern of accusing and blaming those around her for virtually all of her woes [including] co-workers, friends of co-workers, family members, police officers, employers, and, finally, investigators for the [Committee] and [Board]. Notably absent from the line-up was Ms. Knight herself.

The Committee expressed sympathy for Ms. Knight's past difficulties in life, but concluded that those problems did not excuse her from "meeting reasonable expectations of honesty, candor and cooperation with the investigation process" for admission to the Bar.

4.  Board Hearing and Recommendation

The Board considered the Committee's adverse recommendation and, in accordance with the Maryland Rules,[10] held its own hearing in October 2018. Ms. Knight again represented herself at the hearing and testified on her own behalf; she also presented testimony by a character witness. In her own testimony, Ms. Knight disputed the accuracy of the Committee report and criticized the fairness of its process.

In a report dated November 12, 2018, a majority of the Board agreed with the Committee that Ms. Knight's "lack of candor and her failure to timely disclose civil litigation, college suspensions and unfavorable employment terminations seals her fate" and recommended that the Court deny her application for admission to the Bar. The Board identified three items of particular concern in terms of Ms. Knight's candor:

(1) Her failure to update her application concerning her suspension from UMUC despite UMUC having advised her by email of that suspension at least a week before her character interview.[11]

(2) Her failure to disclose seven civil actions (in addition to her bankruptcy and divorce) which the investigator had found through a simple online search of court records.[12]

---

[10] If the Board, upon review of materials provided by a character committee, concludes that there may be grounds for recommending denial of an application, it is to provide the applicant an opportunity for a hearing. Maryland Rule 19-204(b).

[11] Ms. Knight later asserted that she was unaware of the suspension at the time of her interview because she seldom checked her gmail address to which UMUC had sent the notice.

[12] Ms. Knight blamed her allegedly abusive ex-husband for concealing at least some of the lawsuits from her at the time they were filed and said that she had failed to check online court records herself out of haste to complete her bar application. The Board noted

11

(3) Her failure to provide complete answers as to her employment history with Melwood and the Department of Health Care Finance.

The Board reported that it could not find that she responded to these issues "with appropriate candor," although it left open the possibility that her non-disclosures were negligent rather than intentional.[13]

The Board forwarded its recommendation and supporting materials, including Ms. Knight's original application and other submissions, the Committee report, and transcripts of the hearings, to this Court. The Court held a hearing on April 9, 2019, at which Ms. Knight appeared on her own behalf and argued in favor of her admission to the Bar.

## II

## Discussion

It is ultimately the responsibility of this Court to evaluate the character and fitness of applicants to the Bar. In doing so, we rely heavily on the efforts of the Committee and the Board to carry out the difficult, but critical, task of exploring the character and fitness of an applicant when red flags are apparent. In particular, we accord the Board's recommendation "great weight." *Application of Brown*, 449 Md. 669, 684 (2016);

---

that a judgment resulting from at least one of the lawsuits had been listed and discharged in her bankruptcy.

[13] Two members of the Board dissented from this conclusion and observed that Ms. Knight "has overcome many hurdles and difficulties to complete her legal education and to pass the bar examination." While conceding that there were omissions and inaccuracies in Ms. Knight's original bar application, they opined that "[a]ny lack of candor was not intentional" and that Ms. Knight had adequately and credibly explained in supplemental submissions and testimony the discrepancies in her original application.

*Application of Allan S*., 282 Md. at 690-91. In this case, upon independent review, we have no reason to discount the conscientious efforts of the Committee, its investigator, and the Board. We conclude that Ms. Knight did not carry her burden before us that, at this time, she has the moral character and fitness requisite for a member of the Bar.

When an applicant's character is put in question by past misconduct or difficulties, it is significant whether the applicant admits or minimizes the past misconduct. *Application of Allan S.*, 282 Md. at 690. Indeed, it is often the case that the focus of a character review is not so much the nature of past conduct, but whether the applicant has, at the present time, fully and candidly disclosed that conduct in the course of seeking a place in the legal profession. *See, e.g., Application of Overall*, 456 Md. 525, 541-45 (2017); *Application of Strzempek*, 407 Md. 102, 112-15 (2008).

As outlined above, the Committee was sharply critical of Ms. Knight's application and presentation and unanimous in its recommendation that her application be denied. The Board was less critical of her candor than the Committee, but that may be because her disclosures had improved by that point in the process due to the efforts of the Committee and its investigator. It may well be, as the Board suggested, that her deficit in this key quality expected of a prospective lawyer was more the result of negligence than intentional evasion. Indeed, it would appear that she had no incentive to conceal a number of the items that she failed to disclose – *e.g*., the fact that she had been a plaintiff in an automobile tort case. However, it is also apparent that, when a deficiency in her disclosure was exposed, her instinct was to cast blame on others, including the Committee investigator, and to minimize her own responsibility.

Neither any one of Ms. Knight's issues by itself, nor all of them in the aggregate, would necessarily be disqualifying. One may have had past credit issues, litigation, run-ins with the law, traffic citations, academic hiccups, and the like, without those becoming a permanent stain on character that disqualifies one forever from joining the legal profession. Indeed, according to a well-known adage, adversity builds character – or at least reveals it. What may be most revealing is what the applicant reveals about that adversity. According to another adage, the cover-up is often worse than the crime. Lack of candor and forthrightness in the bar admission process may convert a stumbling block into a road block.

Ms. Knight did not appear to grasp the importance of being transparent on her application. In particular, she gave misleading answers about the reasons why she left positions at Melwood and the Department of Health Care Finance, was at best incomplete in her description of her studies at UMUC, and was admittedly lax in responding to questions about past litigation. Moreover, she seemed blind to her need to document or fully explain some of her assertions. For example, the request by Melwood for additional information after she failed a drug test was not an idle fascination with intimate details of her medical history, but an understandable need to verify her explanation that the positive test result was based on a legitimate prescription rather than use of illegal drugs or a misuse of prescription drugs. At the Board hearing, she seemed oblivious to that idea.

If Ms. Knight is not diligent in obtaining and verifying information and making necessary disclosures when something as important as her bar admission is at stake, it suggests that she may take a similarly lax approach when an important matter for a client

is at stake. If she is tempted to mislead in some critical answers on a bar application, she may fall prey to the same temptation in court filings and in communications with opposing parties. Upon our independent review of the record, we cannot say that she carried her burden as to character and fitness.

## III

## Conclusion

For the reasons set forth above, we conclude that Ms. Knight has not met her burden of proving good moral character and fitness to practice law at this time. Accordingly, we must deny her application for admission to the Maryland Bar.

**IT IS SO ORDERED.**